**STATE ex SQUIRE v CLEVELAND (city) et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 16477.   Decided Dec 1, 1937

Alfred Clum, Cleveland, for appellee, City of Cleveland.

H. S. Duffy, Columbus, E. S. Lindemann, Cleveland, Baker, Hostetler, Sidlo & Patterson, Cleveland, and Howard F. Burns, Cleveland, and Newton D. Baker, Cleveland, for appellee S. H. Squire, etc.

Thompson, Hine & Flory, Cleveland, for appellant.

GUERNSEY, PJ, CROW and KLINGER, JJ, (3rd Dist) sitting by designation.

## OPINION

By GUERNSEY, PJ.

This is an appeal on questions of law and fact by Hartford Accident & Indemnity Company, one of the surety companies parties defendant in the court below, which became surety on one of the bonds given by The Union Trust Company to the Sinking Fund Commission of the City of Cleveland, Ohio, for the deposit of funds of said commission with said The Union Trust Company, but is the only party which appealed from the judgment and decree in the Common Pleas Court.

By stipulation of the parties this cause is submitted to this court on the evidence presented to the trial court, that is, a stipulation of facts, a separately bound set of exhibits and the testimony of Thomas Taylor, deputy treasurer of the City of Cleveland.

Only such facts and proceedings will be mentioned as are material to a decision of the case.

On July 1, 1932, the Sinking Fund Commission of the City of Cleveland, following the submission of bids made in response to its advertisement, contracted with The Union Trust Company (hereinafter called "bank") for the deposit of its funds. As security for these deposits the bank gave surety bonds in the face amount of $625,-000.00, including a bond on which Hartford Accident & Indemnity Company was surety. The bank gave no other security for such deposits.

On July 7, 1932, the City of Cleveland, after due advertisement, accepted the bank's bond for the deposit of its active and inactive funds. Although there was only one advertisement and one bid for these funds, two separate contracts were entered into, one covering the "active" funds and the other covering the "inactive funds." As security for these funds the bank deposited with the City of Cleveland various collateral of the face value of $1,120,400.00 and a surety bond in the face amount of $100,000.00. The security

given to the Sinking Fund Commission was changed from time to time as the amount of its deposits with the bank varied. During a short period when these deposits were very large, some collateral security was given in addition to surety bonds but after November 3, 1932, surety bonds were the only security.

When the bank closed in February, 1933, the city held more collateral to secure its active and inactive accounts than was necessary. The surety companies, including The Hartford Accident & Indemnity Company, which had given the bonds held by the Sinking Fund Commission to secure its deposits (hereinafter called the "sureties") insisted that they should have the benefit of the excess collateral held by the city as security for its active and inactive funds. The bank disputed this contention and this is the dispute now before the court.

The conservator of the bank tendered to the city the balance due on its active and inactive deposits and demanded the return of the collateral given to secure those deposits. The city refused to comply with this demand because of the claims made by the sureties and because the bank refused to recognize those claims by either paying the deposits of the Sinking Fund Commission or permitting the excess collateral to be applied to those deposits. The bank instituted this suit against the city to compel the return of the collateral and subsequently the city brought new sureties, including Hartford Accident & Indemnity Company, as new defendants to the suit and called upon them to set forth their claims to the collateral.

After the original petition was filed the bank was taken over by the Superintendent of Banks of Ohio for liquidation. The Superintendent filed a supplemental petition in behalf of the bank, alleging that the sums due the city on its inactive and active accounts had been paid in full and that a large part of the collateral security for those accounts had been returned to the bank, and demanding the return of the collateral still held by the city. The city filed a supplement to its amended cross-petition in which it alleged that it had brought suit in the Federal Court in behalf of the Sinking Fund Commission to recover from the sureties the amount due from the bank to the Sinking Fund Commission; that in that suit the sureties made the defense that they could not be required to pay the sinking fund deposits until the surplus collateral held by the city with respect to its active and inactive

accounts had been applied on the sums due the Sinking Fund Commission, and that this defense was determined adversely to the sureties on the ground that the collateral secured only the city's active and inactive accounts and could not be held as security for the deposits of the Sinking Fund Commission. Similar allegations with respect to the suit in the Federal Court also appear in plaintiff's reply to the various answers and cross-petitions filed by the city and the sureties. The city also stated that the sureties had paid the judgment against them in the amount due the Sinking Fund Commission, that it had no interest in the remaining collateral still held by it and that it would dispose of that collateral in accordance with the court's directions.

Each surety, including Hartford Accident & Indemnity Company, filed an answer and cross-petition setting forth the basis of its claims to the collateral still held by the city. The sureties claimed that, having paid the amount due the Sinking Fund Commission, they were subrogated to its rights in the collateral and that the collateral was available as securety for the deposits made by the Sinking Fund Commission because,—

(1), by the terms of the contract under which the security was given it secured both the city's active and inactive deposits and the deposits of the Sinking Fund Commission, and,

(2), the Sinking Fund Commission had exercised its right to demand additional collateral for its deposits and this collateral was available to it because of that demand.

The facts in support of the plea of res adjudicata made by the city in a supplement to its amended cross-petition and in plaintiff's reply to the various answers and cross-petitions filed by the city and the sureties are as follows:

In June, 1933, the city, acting for the Sinking Fund Commission, brought an action in the United States District Court in Cleveland against the sureties to recover the unpaid deposits of the Sinking Fund Commission. The Hartford Accident & Indemnity Company, appellant herein, notified the bank of the filing of this action and of the contents of the city's petition, and tendered the defense of the suit to the bank. This tender was refused.

In this suit the sureties, including the Hartford Accident & Indemnity Company, filed requested conclusions of law asking the court to find that the collateral for the city's general funds also secured the

funds of the Sinking Fund Commission. The court refused the requested conclusions of law and stated its own conclusions of law, including the following:

"2. The deposits, bonds and security therefor in respect of the deposits in the general funds of the City of Cleveland, viz: —active funds and inactive funds, were definitely and expressly limited to those deposits. The sinking fund deposits and the general fund deposits of the City of Cleveland with the Union Trust Company were separate, distinct and independent engagements. The City of Cleveland could not transfer these securities or excess thereof of The Union Trust Company pledged for the integrity of the general fund deposits to satisfy the payment of the sinking fund deposits."

The court entered its final decree in favor of the city and against the sureties. The sureties, including the appellant, appealed to the Circuit Court of Appeals which court subsequently affirmed the judgment of the District Court. The sureties then paid the city the amount of the respective judgments against them.

In the opinion of the Circuit Court of Appeals affirming the judgment, the following statement appears:

"There was no collateral in the possession of the Sinking Fund Commission at the time the trust company defaulted and the question was raised that collateral pledged to secure the payment of the "active" and "inactive" funds could not be held to meet the deficit in the sinking fund account. It is not necessary to decide this question for the reasons that the sureties obligation would be the same in either case. If the city had the right to resort to such collateral the sureties would have the same right, both because of the common law rule and the express provision of the contract."

It is further stated in said opinion: "In this case the contract is not ambiguous and expressly provided that the surety would pay upon the bank's default. The action of the banks in 1933, constituted defaults and breaches of the bonds. It thereupon became the duty of the sureties to make prompt payments in accordance with the termination of the contracts."

The judgment of the District Court, however, was affirmed without any modification whatever.

The trial court in the instant case held the bank's contracts with the city with respect to the city's active and inactive funds were separate and distinct from its contract with the Sinking Fund Commission with respect to the funds of that Commission, that the city could not hold the collateral as security for the deposits of the Sinking Fund Commission, that the Sinking Fund Commission's demand for additional collateral gave it no interest in this particular collateral because the bank had become insolvent before the demand was made, that neither the Sinking Fund Commission nor the sureties had any interest whatever in the collateral and that the sureties claims to the collateral had been conclusively adjudicated against them in the action filed in the Federal Court. Accordingly the city was ordered to return the collateral to the bank.

Our consideration of this case will be limited to the question as to whether the adjudication in the action filed in the Federal court operated as a bar or estoppel against the sureties, including the appellant Hartford Accident & Indemnity Company, to the relief prayed for by them in the instant case, as a consideration of this question disposes of the entire case.

By the judgment of the Circuit Court of Appeals affirming without modification the judgment of the District Court, the District Court's findings of fact and conclusions of law, and its decree entered on the basis of those findings and conclusions became the final adjudication in the city's action against the sureties.

The District Court's decree as affirmed by the Circuit Court of Appeals established the fact that the title to the collateral was in the bank, subject only to the city's right to hold the collateral as security for its active and inactive deposits. The bank as indemnitor of the sureties and having had an opportunity to participate, was bound by the decision of the Federal Court. Washington Gas Light Co. v District of Columbia, 161 U. S. 316. **First National Bank of Mount Vernon v First National Bank of Lincoln, 68 Oh St 43, 67 NE 91.**

Since a decision in favor of the sureties would have been binding upon the bank, a decision against the sureties, deciding that the bank, rather than the sureties, was entitled to the excess collateral, is available

to the bank as a conclusive adjudication of the surety's rights.

Ettinger & Co. v Southern Surety Ins. Co., 182 Ky. 340, 206 SW 465.

**Quinn, Auditor et v State ex LeRoy, 118 Oh St 48.**

The appellant's attempt to avoid the effect of the decision of the District Court is based solely upon the statement in the opinion of the Circuit Court of Appeals that it did not find it necessary to decide whether the collateral for the city's active and inactive accounts also secured the deposits of the Sinking Fund Commission. However, it is universally held that a court speaks by its record or journal and not by its opinions, and nothing contained in the opinion of the Circuit Court of Appeals can affect the adjudication of the District Court, unless carried into the judgment of the reviewing court. The judgment of the Circuit Court of Appeals was an affirmance of the judgment of the District Court leaving that judgment in its entirety as a final and binding adjudication of the issues presented.

Caverly v Deere, 66 Fed. 305, 308 (C.C.A. 7th 1895).

Russell v Kern, 69 Fed. 94 (C.C.A. 7th 1895).

Evans v Suess Ornamental Glass Co., 83 Fed. 706, 709 (C.C.A. 7th 1897), ( Certiorari denied 171 U. S. 657).

Russell v Russell, 134 Fed. 840 (C.C.A. 3rd 1905).

As stated in 34 Corpus Juris at page 875, et seq., the force of the estoppel lies in the judgment itself; it is not the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon. The reasoning of the court in rendering the judgment forms no part of the judgment, as regards its conclusive effect, nor are the parties bound by remarks made or opinions expressed by the court in deciding the cause, which do not necessarily enter into the judgment.

The judgment of the Federal Court therefore operated as a final and binding adjudication between the parties to this case, of the issues presented by the appellant herein, and the appellant is thereby barred and estopped from any relief herein.

Judgment and decree will therefore be entered herein in favor of the appellees and against the appellant and the answer and cross-petition of the appellant will be dismissed at its costs.

CROW and KLINGER, JJ, concur.