Filed 6/25/18

# IN THE SUPREME COURT OF CALIFORNIA

RANA SAMARA, )
)
    Plaintiff and Appellant, )
) S240918
    v. )
) Ct.App. 2/7 B265752
HAITHAM MATAR, )
) Los Angeles County
    Defendant and Respondent. ) Super. Ct. No. EC056720
_____ )

    When a trial court judgment rests on more than one ground, it may be impossible for a losing party to obtain appellate review of all of the court's determinations. In a breach of contract action, for example, a trial court might grant a defense motion for summary judgment because no contract was formed, and because in any event there was no breach. On direct review, an appellate court could affirm if either of those conclusions was correct, without resolving or even considering the other one. Thus, a plaintiff who argues on appeal that there was a contract (and that the contract was breached) might lose based on a lack of breach without appellate review of whether a contract existed in the first place.

    This case concerns the claim- and issue-preclusive significance, in future litigation, of a conclusion relied on by the trial court and challenged on appeal, but not addressed by the appellate court. We hold that the preclusive effect of the judgment should be evaluated as though the trial court had not relied on the

1

unreviewed ground. Our contrary decision in *People v. Skidmore* (1865) 27
Cal. 287 (*Skidmore*) is overruled.

## I. BACKGROUND

### A. Claim and Issue Preclusion

The law of preclusion helps to ensure that a dispute resolved in one case is
not relitigated in a later case. Although the doctrine has ancient roots (see Note,
*Developments in the Law: Res Judicata* (1952) 65 Harv. L.Rev. 818, 820-822), its
contours and associated terminology have evolved over time. We now refer to
"claim preclusion" rather than "res judicata" (*Mycogen Corp. v. Monsanto Co.*
(2002) 28 Cal.4th 888, 896-897 (*Mycogen*)), and use "issue preclusion" in place of
"direct or collateral estoppel" (*Migra v. Warren City School Dist. Bd. of Educ.*
(1984) 465 U.S. 75, 77, fn. 1; see *Vandenberg v. Superior Court* (1999) 21 Cal.4th
815, 824 (*Vandenberg*)).[1]

Claim and issue preclusion have different requirements and effects. Claim
preclusion prevents relitigation of entire causes of action. (*Mycogen*, *supra¸*
28 Cal.4th at p. 896; see also *id.*, at p. 904 [discussing "primary right theory,"
which defines the scope of a cause of action].) Claim preclusion applies only
when "a second suit involves (1) the same cause of action (2) between the same
parties [or their privies] (3) after a final judgment on the merits in the first suit."

---

[1]      We also avoid using " 'res judicata' as an umbrella term" capable of
referring to claim preclusion, issue preclusion, or both. (*DKN Holdings v. Faerber*
(2015) 61 Cal.4th 813, 823 (*DKN Holdings*); see *Lucido v. Superior Court* (1990)
51 Cal.3d 335, 341, fn. 3 (*Lucido*).) Even the more modern terminology of
"claim" and "issue" preclusion can be further refined. (See, e.g., *Standefer v.
United States* (1980) 447 U.S. 10, 21 [describing "nonmutual" issue preclusion];
*Parklane Hosiery Co., Inc. v. Shore* (1979) 439 U.S. 322, 329 [distinguishing
"offensive" and "defensive" issue preclusion].) But for present purposes, "claim"
and "issue" preclusion will suffice.

(*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.) Issue preclusion, by contrast, prevents "relitigation of previously decided issues," rather than causes of action as a whole. (*Ibid.*) It applies only "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.*, at p. 825.) Courts have understood the " 'necessarily decided' " prong to "require[] only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding" (*Lucido*, *supra*, 51 Cal.3d at p. 342) — leaving room for a decision based on two grounds to be preclusive as to both.

## B. Facts and Procedural History

Plaintiff Rana Samara was missing a tooth. Dr. Haitham Matar recommended that she receive a dental implant, and Dr. Stephen Nahigian performed the implantation surgery. Samara later sued them both for professional negligence. Our focus is Samara's contention that defendant Matar is vicariously liable for former defendant Nahigian's alleged tort.

### 1. First judgment, in favor of Nahigian

Nahigian moved for summary judgment. He argued, in pertinent part, that the suit against him was untimely and that he did not cause Samara's alleged injuries. The trial court agreed that the suit was untimely with respect to Nahigian (unlike Matar) and further agreed that no material factual dispute prevented judgment in Nahigian's favor on the issue of causation. The court entered judgment on both grounds.

Samara appealed. She conceded that the judgment against her could be affirmed based on the statute of limitations. Concerned about the potential preclusive effect of the trial court's determination regarding a lack of causation, however, she urged the Court of Appeal to reverse that portion of the trial court's

decision.  The Court of Appeal declined to do so in an unpublished opinion, stating, "We need not, and do not, reach the court's alternative ground for granting summary judgment."  It added, "Because the question is not before us, we also do not address whether collateral estoppel may be used with regard to an alternative ground for judgment not reviewed by the appellate court."

### 2.  *Second judgment, in favor of Matar*

Around the time Samara noticed an appeal from the first judgment, Matar moved for summary judgment in the trial court.  As relevant here, Matar argued that the court's earlier no-causation determination precluded holding him liable for Nahigian's conduct.  After the remittitur issued in the first appeal, the trial court agreed, granting Matar's motion for summary judgment.  Although the particulars of the trial court's reasoning are not entirely clear, the core of its rationale was that because Nahigian was not liable to Samara for his conduct, Matar could not be liable for that conduct vicariously.

The Court of Appeal, in an opinion issued by the same panel that decided the first appeal, reversed and remanded the matter.  It concluded that preclusion provided no basis for the trial court's decision.  The court's analysis of claim preclusion focused on whether there had been "a final judgment on the merits in the first suit." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.)  The court observed that the prior judgment was affirmed solely because of the statute of limitations, which the court believed to be a "purely procedural ground" rather than a decision on the merits.  Nevertheless, the court acknowledged that under our decision in *Skidmore*, *supra*, 27 Cal. 287, a judgment on the merits affirmed on purely procedural grounds might qualify as a judgment on the merits in the relevant sense.  Noting that "the Supreme Court [of California] might want to address" the continuing vitality of the "Civil War-era" *Skidmore* decision, the Court of Appeal

4

instead ruled that claim preclusion was unavailable because Samara sued Nahigian and Matar in a single lawsuit, rather than two successive suits.  The court further held that *Skidmore* was inapplicable to issue preclusion, concluding that "an affirmance on an alternative ground operates as collateral estoppel/issue preclusion only on the ground reached by the appellate court."

We granted Matar's petition for review.  He contends that the Court of Appeal's claim- and issue-preclusion analysis is inconsistent with *Skidmore* and asks us to "address the viability of" that 1865 decision.  Because we conclude that *Skidmore* must be overruled, we agree with the Court of Appeal that Matar is not entitled to summary judgment on preclusion grounds.

## II.  *SKIDMORE*'S VIABILITY

### A.  The *Skidmore* Decision

To contextualize *Skidmore*'s analysis of the preclusive effect of a particular judgment, we begin by describing the litigation resulting in that judgment.

Walter Skidmore was charged with murder.  (*Skidmore*, *supra*, 27 Cal. at p. 289.)  To secure his appearance to answer the charge, Skidmore and his sureties entered into a recognizance, something roughly akin to a bail bond.  (See *ibid.*)  Skidmore also created a trust for his sureties' financial protection, pledging property toward the payment and extinguishment of the recognizance should he fail to appear.  (*People v. Skidmore* (1861) 17 Cal. 260, 261; unless otherwise noted, all short-form *Skidmore* citations concern the 1865 appellate decision.)  After he failed to appear, the People sued.  (*Ibid.*)  The suit sought equitable relief against the trustee, urging that the property held in trust "be applied to the debt due by the recognizance."  (*Ibid.*; see also *Skidmore*, *supra*, 27 Cal. at p. 289.)  The trial court entered judgment against the People, and the People appealed.

5

We affirmed. (*People v. Skidmore*, *supra*, 17 Cal. at p. 262 [initial appeal].) Our opinion addressed a demurrer based on "a misjoinder of causes of action, among other [objections]." (*Id.*, at p. 261.) Declining to reach those other objections, we agreed that there had been a misjoinder: "It may be that the sureties will not be held liable at all; or it may be, if they are, that they are ready and willing to pay whenever their liability is declared; and in that case, there would be no necessity of coming upon this fund. If, after judgment, the defendants are insolvent, another question might arise, or the question might arise of a right to sell or subject this property as the property of Skidmore. But it is not necessary to pass upon this matter in advance of the proper stage of the inquiry." (*Id.*, at p. 262.) "The effect of the judgment and of this affirmance," we added, "will not be to preclude the plaintiff from suing again when the cause of action can be more formally set out." (*Ibid.*)

A second suit followed. (See *Skidmore*, *supra*, 27 Cal. at p. 289.) In the decision at the core of this case, we held that the People's claim was barred. In determining whether the decision in the first case barred the second suit, we treated as dictum our earlier statement that the first suit would not preclude a second one (*id.*, at p. 293) and deemed the dispositive issue whether the judgment in the first suit was "based upon the merits" (*id.*, at p. 289). We concluded that it was. (*Id.*, at p. 294.) The judgment entered by the trial court, we reasoned, was "based upon the merits of the claim, and not upon the dilatory matters raised by the demurrer nor any other mere technical defect." (*Ibid.*) And although our affirmance had been limited to the misjoinder problem — a non-merits issue — we noted that we had not reversed or modified the trial court's judgment. (*Id.*, at pp. 292-293.) As we explained, "in examining the judgment in connection with the errors assigned, [we] found that there was at least one ground upon which the judgment could be justified, and therefore very properly refrained from

6

considering it in connection with the other errors. But the affirmance, still, was an affirmance to the whole extent of the legal effect of the judgment at the time when it was entered in the court below. [We] found no error in the record, and therefore not only allowed it to stand, but affirmed it as an entirety, and by direct expression." (*Ibid.*) Treating "the judgment rendered in the first action . . . now as it was in the beginning," we held that the People's claim was barred. (*Id.*, at p. 293.) In doing so, we allowed a trial court's ruling to determine the preclusive effect of the judgment, without regard for whether that ruling was addressed on appeal.

Courts considering *Skidmore* have disagreed about whether its precedential force extends to issue preclusion. (Compare, e.g., *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 86 (*Zevnik*) [no] with, e.g., *Diruzza v. County of Tehama* (9th Cir. 2003) 323 F.3d 1147, 1153 (*Diruzza*) [yes].) It might be argued that *Skidmore* addressed only claim preclusion and that requirements unique to issue preclusion make *Skidmore* inapplicable in that context. (See, e.g., *Zevnik*, at p. 86 ["*Skidmore* involved res judicata rather than collateral estoppel and therefore is not on point"].) *Skidmore*, however, cannot be so easily limited. It is not enough to observe, for example, that issue preclusion applies only to issues "actually litigated and necessarily decided in the first suit" (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825; see *Zevnik*, 159 Cal.App.4th at p. 88), because it matters which court's decision is the focus of the inquiry. If, as in *Skidmore*, the focus of the preclusion inquiry is the trial court's decision, then an issue might have been "actually litigated and necessarily decided" (*DKN Holdings*, at p. 825) whether or not an appellate court agreed with the trial court's disposition of the issue.

We need not decide exactly what *Skidmore* means for the law of issue preclusion. (Cf. *Moss v. Superior Court* (1998) 17 Cal.4th 396, 401 [disapproving a prior decision "insofar as it might be read to apply" to certain orders]; *People v.*

*Carbajal* (1995) 10 Cal.4th 1114, 1126 [disapproving a prior decision "insofar as [it] may be read" in a particular way].) For present purposes, it is enough to say that *Skidmore*'s focus on the trial court's decision, without regard for the basis of the appellate court's affirmance, could reasonably be understood to bear on the issue preclusion inquiry. (See *Diruzza*, *supra*, 323 F.3d at p. 1153; see also *People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1574-1575 [suggesting that *Skidmore* was relevant to issue preclusion, but refusing to follow it]; *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1130-1132 [same].)

## B. *Skidmore*'s Aftermath

Although *Skidmore* has not been widely cited, there was once broad support for the view that the preclusive effect of an affirmed judgment should be determined without regard for the basis of the affirmance. (See, e.g., *Bank of America v. McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620, 628-629; *State ex rel. Squire v. City of Cleveland* (Ohio 1937) 22 N.E.2d 223, 225-226; *Kinsley Bank v. Woods* (Mo.Ct.App. 1934) 78 S.W.2d 148, 149; *Russell v. Russell* (3d Cir. 1905) 134 F. 840, 840-841; *Town of Fulton v. Pomeroy* (Wis. 1901) 831, 832-834; *Finch v. Hollinger* (1877) 46 Iowa 216, 217-218; but see, e.g., *Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A.* (2d Cir. 1937) 92 F.2d 37, 40-41.)

However, courts' understanding of preclusion has evolved in the more than 150 years since *Skidmore* was decided. Although no precise turning point can or must be identified, one influential development occurred in 1942, when the Restatement First of Judgments diverged from *Skidmore*'s reasoning. The Restatement, concerning claim preclusion, conveyed that "[w]here the trial court bases the judgment for the defendant upon two alternative grounds, one on the

8

merits and the other not on the merits, and an appellate court affirms the judgment solely on the ground which is not on the merits, the judgment does not bar a subsequent action by the plaintiff based upon the same cause of action." (Rest., Judgments (1942) § 49, com. c., p. 196; see also *Mycogen*, *supra*, 28 Cal.4th at pp. 896-897 [dividing claim preclusion into "merge[r]" and "bar"].) The Restatement similarly opined, in passages addressing issue preclusion, that a judgment affirmed on one of two alternative grounds "is not conclusive in a subsequent action in which the other ground is in issue" (Rest., Judgments, *supra*, § 68, com. n, p. 308), and that "[i]f the appellate court determines that one of these grounds is sufficient and refuses to consider whether or not the other ground is sufficient, and accordingly affirms the judgment, the judgment is conclusive only as to the first ground" (*id.*, § 69, com. b, p. 316). In short, the Restatement would evaluate the claim- and issue-preclusive effect of the judgment without regard for a determination relied upon by the trial court but not embraced on appeal.

The Restatement Second of Judgments, published in 1982, echoes the position of the Restatement First of Judgments with respect to issue preclusion. (See Rest.2d Judgments (1982) § 27, com. o, p. 263.) The second Restatement does not appear to take an explicit position on the claim preclusive effect of a judgment affirmed on a non-merits ground, perhaps reflecting aversion to the terminology " 'on the merits[,]' " which has "possibly misleading connotations." (*Id.*, § 19, com. a, p. 161.) Regardless, the second Restatement conveys that in the absence of an appeal, a trial court "dismissal . . . based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim . . . should not operate as a bar." (*Id.*, § 20, com. e, p. 172.) Nothing in the second Restatement suggests that if such a judgment is affirmed solely on grounds that would not trigger claim preclusion, the judgment should be imbued with claim preclusive effect.

9

The weight of more recent authority is in accord with these Restatements, at least with respect to cases in which an appeal has been taken. (See 18 Wright et al., Fed. Practice and Procedure: Jurisdiction & Related Matters (3d ed. 2016) § 4421, p. 619 ["The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision"]; 18A Wright et al., *supra*, § 4432, p. 60 ["the nature of the ultimate final judgment in a case ordinarily is controlled by the actual appellate disposition"]; see also, e.g., *Omimex Canada, Ltd. v. State, Dept. of Revenue* (Mont. 2015) 346 P.3d 1125, 1129-1130; *Tydings v. Greenfield, Stein & Senior, LLP* (N.Y. 2008) 897 N.E.2d 1044, 1046-1047; *Beaver v. John Q. Hammons Hotels, L.P.* (Ark. 2003) 138 S.W.3d 664, 666-670; *Stanton v. Schultz* (Colo. 2010) 222 P.3d 303, 309; *Connecticut Nat. Bank v. Rytman* (Conn. 1997) 694 A.2d 1246, 1254; *Humana, Inc. v. Davis* (Ga. 1991) 407 S.E.2d 725, 726-727; but see, e.g., *Markoff v. New York Life Ins. Co* (9th Cir. 1976) 530 F.2d 841, 842 [attempting to discern Nevada law].) Although most of these authorities concern issue rather than claim preclusion, their refusal to afford preclusive significance to a trial court determination that evades appellate review is informative.

## C. *Skidmore*'s Continuing Vitality

### 1. Skidmore *reflects a flawed view of preclusion*

We agree with the weight of modern authority that *Skidmore*'s approach to preclusion is flawed.

Rules of claim and issue preclusion are, or at least should be, inextricably intertwined with rules of procedure. (See Rest.2d Judgments, *supra*, Introduction, pp. 5-13.) The law of preclusion reflects a view "that at some point arguable questions of right and wrong for practical purposes simply cannot be argued any

more. It compels repose. In substituting compulsion for persuasion, the law of [preclusion] trenches upon freedom to petition about grievances and autonomy of action, very serious concerns in an open society." (*Id.*, at p. 11.) This finality "has to be accepted if the idea of law is to be accepted, certainly if there is to be practical meaning to the idea that legal disputes can be resolved by judicial process." (*Ibid.*) But that does not mean finality should be embraced reflexively, nor attached to every decision rendered. "The 'chance' to litigate is not simply some unspecified opportunity for disputation over legal rights; it is the opportunity to submit a dispute over legal rights to a tribunal legally empowered to decide it according to definite procedural rules." (*Id.*, at pp. 6-7.) The less robust the process involved in resolving litigation the first time, the stronger the argument for permitting litigation once more. (Compare, e.g., *Sanderson v. Niemann* (1941) 17 Cal.2d 563 [deeming small claims court too informal to support issue preclusion] with, e.g., *Perez v. City of San Bruno* (1980) 27 Cal.3d 875, 884-885 [more formal trial on appeal from small claims court judgment can support issue preclusion].)

The availability of a direct appeal reflects a sensible determination that the process culminating in a trial court's disputed decision is not sufficient to resolve litigation conclusively. Of course, a litigant's ability to secure appellate review may be waived or forfeited, as when a litigant fails to file a timely notice of appeal or fails to make an objection in the trial court. But when a litigant properly seeks appellate review of a ground underlying a trial court's determination, the fortuity that the judgment may be sustained on some other ground should not imbue the challenged ground with final and conclusive effect. The challenged ground is no more reliable — no more deserving of finality — merely because it need not be evaluated to resolve the appeal. (See *Zevnik*, *supra*, 159 Cal.App.4th at p. 85.)

11

Recall, for example, the hypothetical breach of contract action in which the trial court concludes that no contract existed, and that even if a contract existed, the contract was not breached. (See *ante*, at p. 1.) If an appellate court agrees that any existing contract was not breached — but does not consider whether any contract existed in the first place — it would be harsh indeed to bind the plaintiff to the trial court's "no contract" determination, preventing the plaintiff from suing the defendant on the contract even for subsequent conduct that clearly would constitute a material breach. Perhaps there was a contract, perhaps not. But the trial court's answer to that question should not be final merely because the judgment could be affirmed on another ground. *Skidmore*'s focus on the trial court's reasoning, however, is in tension with this conclusion.

*Skidmore* also is in tension with some of our other preclusion case law. We have repeatedly underscored the important role that the availability of appellate review plays in ensuring that a determination is sufficiently reliable to be conclusive in future litigation. We have, for example:

- Refused to give preclusive effect to a trial court's legal ruling on child custody issues presented by writ of habeas corpus, acknowledging that, "[s]ince an order denying an application for writ of habeas corpus is not appealable," finding preclusion would "wrongfully deprive[]" "the unsuccessful petitioner" "of custody until such time as he could allege a change in circumstances" (*In re Richard M.* (1975) 14 Cal.3d 783, 790);

- Held that a finding made in connection with a cause of action should not have preclusive effect when the finding was adverse to the party that prevailed on that cause of action, in part because the party could not appeal (see *Albertson v. Raboff* (1956) 46 Cal.2d 375, 384-385);

- Embraced a rule that an entity cannot be bound by a judgment as a privy, based on alleged control over the underlying litigation, if the entity lacks

12

control over whether to take an appeal (see *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581-582);

- Held that at least a certain type of issue preclusion might not attach to the decision of a private arbitrator, in part because "the arbitrator's errors must be accepted without opportunity for review" (*Vandenberg*, *supra*, 21 Cal.4th at p. 832); and

- Explained that, when evaluating the preclusive effect of an administrative determination, " '[t]he opportunity for judicial review of adverse rulings' is an important procedural protection against a potentially erroneous determination and is a factor to consider in determining whether collateral estoppel [(that is, issue preclusion)] applies. ([Citation]; see also Rest.2d Judgments, § 28(1), p. 273 [issue preclusion will not apply if the party to be precluded could not, as a matter of law, obtain review].)" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 875-876.)[2]

The fundamental problem with *Skidmore*, then, is that it improperly gave effect to a trial court determination that evaded appellate review. Our opinion in the appeal preceding *Skidmore* considered only whether there had been a misjoinder of causes of action. We nevertheless held in *Skidmore* that the judgment at issue in the first case was "upon the merits," because of a trial court determination that we did not embrace on appeal. (*Skidmore*, *supra*, 27 Cal. at p. 293.) More than a century later, and consistent with the modern approach to preclusion described above, we now conclude that a ground reached by the trial court and properly challenged on appeal, but not embraced by the appellate court's

---

**2** Our law's emphasis on the importance of some form of judicial review is not limited to the preclusion context. (See generally *Powers v. City of Richmond* (1995) 10 Cal.4th 85 [discussing state constitutional right of review].)

13

decision, should not affect the judgment's preclusive effect. This approach aligns far better with the recognition that although trial court decisions are often thorough, thoughtful, and correct, litigants should be afforded more procedural fairness before being bound by all aspects of a trial court's challenged determination.

Matar contends, however, that *Skidmore* properly reflects the principle that a trial court's judgment is presumptively correct. (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This argument confuses two concepts. It is true that a trial court's judgment is presumed correct, and so ordinarily will not be set aside on appeal absent an affirmative showing of reversible error. (*See id.*; but see, e.g., Code Civ. Proc., § 128, subd. (a)(8) [stipulated reversals].) But that principle governs how appellate courts should review trial court determinations; it does not speak to the preclusive effect, in future litigation, of a challenged trial court determination that evaded appellate review. The distinction is particularly clear under California law: Although the presumption of correctness applies while direct review is ongoing (see *Denham*, at p. 564), under California law, an unsatisfied trial court judgment has no preclusive effect until the appellate process is complete (see, e.g., *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954; *Brown v. Campbell* (1893) 100 Cal. 635, 646-647).

Matar also argues that affording preclusive effect to a trial court's alternative (but ultimately unnecessary) determination would reduce litigation, thereby promoting judicial economy. We are not so sure. "While the rules of preclusion are supported in part by considerations of efficiency, affording the possibility of reconsideration is also a matter of efficiency, for it relaxes the requirements of procedural meticulousness in the first instance." (Rest.2d Judgments, *supra*, Introduction, p. 12.) To hold that an unreviewed alternative ground has preclusive effect "would put pressure on appellate courts to review

14

alternative grounds as a matter of course . . . ." (*Zevnik*, *supra*, 159 Cal.App.4th at p. 85 [discussing issue preclusion].)  Thus, "[a]ny benefit that might result from precluding" relitigation in future cases — cases "which may or may not arise" — "would come at the cost of increasing the burden on the appellate court in the initial action."  (*Ibid.*)

Nor is it clear that affording preclusive effect to such an alternative ground would protect parties from the burdens of litigation, as Matar also argues.  If all unreversed trial court determinations must be given preclusive effect, then nonparties, armed with the issue preclusive effect of the trial court's unreviewed determination, may be encouraged to engage in litigation with the party bound by the effectively unappealable determination.  (Cf. *Vandenberg*, *supra*, 21 Cal.4th at pp. 831-834.)

In any event, our judicial system does not exist simply to resolve cases quickly, nor to prevent litigation from ever taking place.  It is a serious matter whether a decision is correct in law and results from a fair process for all sides.  Affording preclusive effect to a trial court determination that evades appellate review might speed up the resolution of controversies, but it would do so at the expense of fairness, accuracy, and the integrity of the judicial system.  We decline to endorse that tradeoff.  (Cf. *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77 (*Johnson*) [refusing to give preclusive effect to a judgment based on laches, notwithstanding "the public policies of giving certainty to legal proceedings, preventing parties from being unfairly subjected to repetitive litigation, and preserving judicial resources"].)

We further observe that Matar's concerns about repetitive litigation are overstated.  For one thing, if Matar had sought summary judgment on causation grounds when Nahigian did, Matar, too, would have had the benefit of the trial court's decision.  Had Samara appealed, the judgment would not have been

15

affirmed *with respect to Matar* simply because Samara's suit *against Nahigian* was untimely; the Court of Appeal would likely have confronted the merits of the trial court's no-causation ruling. In other words, Matar could have promoted judicial economy and protected himself from the burdens of further litigation simply by timely filing such a motion. (Cf. *Love v. Waltz* (1857) 7 Cal. 250, 252 ["If defendants had any doubt in regard to the right of plaintiff to sue, and wished to be protected from any further liability to Mrs. Love, they should have made her a party to the first suit, and then the judgment would have been conclusive upon all parties that could have any interest"].)

More generally, courts are not powerless to prevent a waste of judicial resources. Appellate courts can affirm on multiple grounds where appropriate. Trial courts can decline to reach issues that are unnecessary for judgment. And although, on remand, the trial court in this case should resolve Matar's motion for summary judgment without relying on the supposedly preclusive effect of the judgment in favor of Nahigian, the court need not forget or ignore the work it has already completed in this litigation. Declining to find preclusion does not require that a new judge be assigned and the case start afresh; it means only that a prior determination by itself does not necessarily, as a matter of law, bind the future one — and that the correctness of that future determination, if appealed, can be reviewed on its merits.

　　　*2. Stare decisis does not compel continued adherence to* Skidmore

"[T]he doctrine of stare decisis" is "a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices." (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296.) But the policy is just that — a policy — and it admits of exceptions in rare and appropriate

16

cases.  Factors that have contributed to our reconsideration of precedent include: "a . . . tide of critical or contrary authority from other jurisdictions" (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 100); our precedent's "divergence from the path followed by the Restatements" (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1179); and our concern that no "satisfactory rationalization has been advanced" for the decision at issue (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 812 [overruling mutuality requirement for issue preclusion]).  As discussed, these rare factors are present here, as is tension between *Skidmore* and our other preclusion case law.

Moreover, several of the concerns that can give stare decisis particular force are not applicable in this case.  When the party urging us to overrule a decision could have easily avoided the decision's effect, for example, we are less inclined to disturb our precedent.  (See, e.g., *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 272 [declining to overrule principle that nonparty class member cannot appeal, where other options meant that member would not be "discourage[d] . . . from filing a meritorious appeal"]; cf. *Kimble v. Marvel Entertainment, LLC* (2015) __ U.S. __, __ [135 S.Ct. 2401, 2408] [declining to overrule case that contracting "parties can often find ways around"].)  Under *Skidmore*, however, a party that has lost in the trial court and has appealed the trial court's rulings can do little to ensure reversal of an adverse but ultimately unnecessary trial court determination.

Nor does *Skidmore* implicate the reliance concerns that have encouraged adherence to precedent in other contexts.  We are particularly reluctant to overrule precedent when, unlike here, "[d]oubtless many people" have entered into transactions in reliance upon that precedent.  (*Sacramento Bank v. Alcorn* (1898) 121 Cal. 379, 382.)  Although *Skidmore* might theoretically have induced some

17

number of settlements following unsuccessful appeals, it is not the sort of "rule of property" that encourages strict adherence to precedent.  (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 1000.)  Perhaps for this reason, no party has urged us to depart from "the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation," rather than purely prospective.  (*County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 680-681.)

Under all these circumstances, we conclude that *People v. Skidmore*, *supra*, 27 Cal. 287 should be — and is now — overruled.  We caution, however, that we take no position on the significance of an independently sufficient alternative ground reached by the trial court and *not* challenged on appeal.

### III.  NEITHER CLAIM NOR ISSUE PRECLUSION SUPPORTS THE SUMMARY JUDGMENT IN FAVOR OF MATAR

Whether the trial court erred by granting Matar's motion for summary judgment is a question of law we review de novo.  (See, e.g., *Johnson*, *supra*, 24 Cal.4th at pp. 67-68.)  We hold that it did.  The critical point here is that the preclusive effect of the judgment in favor of Nahigian should be evaluated as though the trial court had not reached the causation issue.  (See *ante*, Part II.C.)  That premise implies that the causation issue was not "necessarily decided in the first suit," or even "decided" at all, rendering issue preclusion unavailable.  (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825.)  Moreover, the Court of Appeal concluded, and Matar's briefing does not dispute, that a decision on timeliness grounds is not a decision "on the merits" in the relevant sense.  Accepting that premise as undisputed (and without deciding its correctness), it follows that the ruling in favor of Nahigian was not a "final judgment on the merits," and that claim preclusion is likewise unavailable.  (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.)  Thus, neither claim nor issue preclusion can support the summary judgment entered in favor of Matar, and the trial court's ruling to the contrary was erroneous.

18

## IV. DISPOSITION

We affirm the judgment of the Court of Appeal; overrule *Skidmore*, *supra*, 27 Cal. 287; and disapprove *Bank of America v. McLaughlin etc. Co.*, *supra*, 40 Cal.App.2d 620, to the extent it is inconsistent with this opinion.[3]

CANTIL-SAKAUYE, C. J.

WE CONCUR:

CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.
HOCH, J.*

---

[3] We decline to address any other issues raised by the parties. (See Cal. Rules of Court, rule 8.516(b)(3).)

\* Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Samara v. Matar

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 8 Cal.App.5th 796
**Rehearing Granted**

_____

**Opinion No.** S240918
**Date Filed:** June 25, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** William D. Stewart

_____

**Counsel:**

Curd, Galindo & Smith, Alexis Galindo and Tracy Labrusciano for Plaintiff and Appellant.

Ford, Walker, Haggerty & Behar, Katherine M. Harwood; Tardiff Law Offices and Neil S. Tardiff for Defendant and Respondent.

McGarrigle Kenney & Zampiello, Patrick C. McGarrigle and Michael J. Kenney for Kenneth Barton as Amicus Curiae on behalf of Defendant and Respondent.

Law Offices of Mary A. Lehman and Mary A. Lehman for Stephen H. Bennett, Richard T. Letwak and Letwak & Bennett as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Tracy Labrusciano
Curd, Galindo & Smith
301 East Ocean Boulevard, #1700
Long Beach, CA  90802
(562) 624-1177

Neil S. Tardiff
Tardiff Law Offices
P.O. Box 1446
San Luis Obispo, CA  93406
(805) 544-8100

Patrick C. McGarrigle
McGarrigle Kenney & Zampiello
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, CA  91311
(818) 998-3300