Filed 3/3/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| STEVEN C. KIM,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NEW LIFE OASIS CHURCH et al.,<br><br>    Defendants and Respondents. | B331916<br><br>Los Angeles County<br>Super. Ct. No. BC722458 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Williams Court and Colin P. Leis, Judges.  Affirmed.

Law Offices of Steven C. Kim & Associates, Steven C. Kim and Gabriel Colorado for Plaintiff and Appellant.

The Milner Firm and Timothy V. Milner for Defendant and Respondent New Life Oasis Church.

Fidelity National Law Group, David B. Owen and Kevin R. Broersma for Defendant and Respondent Bank of Hope.

————————————

Attorney Steven C. Kim took a lien against his client's real property to secure his attorney fee. The trial court ordered Kim's client to convey that property to fulfill a sales contract. Kim's lien was obstructing the sale, and the trial court expunged Kim's lien. Kim's client appealed, the Court of Appeal dismissed the appeal, no one sought review in the Supreme Court, and the judgment became final. That was in 2018. Three days later, Kim brought a new suit – this suit – against the same buyer of the same property. Kim's new case sought a declaration that his expunged lien was *valid* and the result in the earlier suit was wrong. The buyer successfully invoked issue preclusion, and Kim now appeals this new defeat. We affirm because the first suit settled the issue. Kim cannot relitigate the loss of his lien.

I

This opinion is the *seventh* appellate decision in a long-running controversy among three churches over real property located at 1041 South Oxford Street in Los Angeles. This saga is now in its 14th year.

We review the essentials.

The Los Angeles Central Korean Evangelical Church joined, but then separated from, the Church of the Brethren, which is headquartered in Illinois. We will refer to the Los Angeles church as Central Korean.

Over the years, Kim has always been Central Korean's attorney.

The separation of these two churches entailed deciding which owned what real property. Our colleagues in Division Four settled this question in their first two appellate opinions about the controversy. (See *Pacific Southwest District of the Church of the Brethren v. Church of the Brethren, Inc.* (June 23, 2014,

2

B247729) [nonpub. opn.]; *Central Korean Evangelical Church v. Superior Court* (July 15, 2015, B260831) [nonpub. opn.] (*2015 Opinion*).)

The appellate court ultimately determined Church of the Brethren owned "lot 44" and Central Korean owned "lots 48 and 49." (*2015 Opinion, supra.*)

Central Korean also had contracted to sell its real property to a third church: New Life Oasis Church, which we shorten to New Life. Central Korean reneged on the deal, and New Life sued it for specific performance. The trial court ruled for New Life.

The third and fourth trips to the Court of Appeal determined that (3) Central Korean was not entitled to a writ of supersedeas and (4) Central Korean had to make good on its deal to sell to New Life. This latter decision affirmed the trial court result. (See *New Life Oasis Church v. Central Korean Evangelical Church* (July 16, 2018, B281703) [nonpub. opn.]; *New Life Oasis Church v. Central Korean Evangelical Church* (Sept. 17, 2018, B286061) [nonpub. opn.] [recounting denial of 2017 supersedeas writ].)

Two further decisions from Division Four decided other aspects of the dispute.

The fifth decision concerned attorney fees. (*New Life Oasis Church v. Central Korean Evangelical Church* (Aug. 20, 2018, B284456) [nonpub. opn.].)

The sixth appellate decision, in September 2018, dismissed an appeal by Central Korean. (*New Life Oasis Church v. Central Korean Evangelical Church* (Sept. 17, 2018, B286061) [nonpub. opn.] (September 2018 decision).)

The September 2018 decision now bears decisive importance. We describe that appeal, in which Kim continued to represent Central Korean.

The September 2018 decision began by recounting that New Life had leased church property from Central Korean with an option to purchase. In 2013, Central Korean and its pastor Jang Kyun Park had executed a deed of trust on real property that was the subject of litigation to secure the payment of unpaid attorney fees they owed to attorney Kim. Kim was the beneficiary of this deed. New Life sued Central Korean and Park for refusing to honor New Life's exercise of the purchase option. The trial court found in favor of New Life on its breach of contract claim and ordered specific performance of the purchase option. (*September 2018 decision*, *supra*.)

The September 2018 decision recited that, after the entry of judgment, New Life applied to expunge Kim's deed of trust against the property. New Life alleged that, on the day scheduled for closing, Kim entered an escrow demand of $826,051.06 based on the deed of trust: he was trying to collect his attorney fee. According to New Life, Kim's lien clouded title to the property, thus preventing the parties from closing escrow.

Park and Central Korean opposed New Life's application to expunge Kim's deed of trust. They contended the trial court lacked jurisdiction to order the termination of the deed of trust because Kim was not a party to the action but merely Central Korean's attorney. (September 2018 decision, *supra*.)

On October 19, 2017, the trial court granted New Life's application. The court ordered Kim's deed of trust be extinguished and commanded Kim to withdraw his escrow

4

demand.  Central Korean sold the property to New Life on October 30, 2017.  (September 2018 decision, *supra*.)

Kim's property interest thus was a direct target of the trial court order.

Park and Central Korean appealed this order, but the September 2018 decision determined that neither Park nor Central Korean had standing to appeal.  The Court of Appeal noted Park and Central Korean conceded the appeal dealt with *Kim's* substantive and independent property rights arising out of the deed of trust.  (September 2018 decision, *supra*.)

The court rejected Park's and Central Korean's claim that extinguishing the lien deprived them of the only means they had to pay Kim for his legal services.  "The deed of trust simply secured Kim's interest in his unpaid attorney fees.  The termination of the deed of trust did not prevent [Park and Central Korean] from using the proceeds from the property sale to pay for the fees owed to Kim.  In fact, [Park and Central Korean] presumably had the funds to satisfy the attorney fees obligation after the property was sold to New Life last year. . . . Kim, as the beneficiary, was the only person who was aggrieved by the order extinguishing his deed of trust."  (September 2018 decision, *supra*.)

The September 2018 decision observed Kim personally could have challenged the expungement order.  "A nonparty who is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by filing a motion to vacate pursuant to Code of Civil Procedure section 663 [citations].  The filing of a motion to vacate provides a means by which a nonparty may become a party with a right of appeal without the need to formally intervene in the action.  [Citation.]  The record does not

5

reflect the filing of any such motion in this case." (September 2018 decision, *supra*.)

In other words, only Kim had a direct interest in the appeal, in which he could have participated, but he failed to follow the mandatory procedure. Kim's omission doomed his ability to relitigate this issue.

"We conclude appellants [Park and Central Korean] were not directly aggrieved by the order extinguishing the deed of trust, and Kim failed to secure the right to appeal by pursuing a motion to vacate. Accordingly, the appeal [by Park and Central Korean] must be dismissed." (September 2018 decision, *supra*.)

The Court of Appeal filed this decision on September 17, 2018.

Three days later, Kim filed the action that is the subject of this appeal. As a self-represented plaintiff, Kim sued New Life, seeking a declaration that, contrary to the previous court action, his lien was *valid* and the October 19, 2017 order extinguishing that lien was "rendered without jurisdiction and therefore is of no legal force and effect . . . ." Kim included a second cause of action for an injunction. Later, Kim amended to add the Bank of Hope, which is a lienholder on the property. Kim filed a lis pendens against the property as well.

New Life filed a cross-complaint against Kim, alleging the lis pendens was a slander of title and an abuse of process.

New Life and Bank of Hope moved for judgment on the pleadings. The trial court granted this motion without leave to amend. The court reasoned, in part, that the doctrine of collateral estoppel barred Kim's effort to relitigate the lien question. The court later also ruled for New Life on its cross-complaint. Kim had lost entirely, and he alone appealed.

6

## II

We begin with the governing law. The doctrine of preclusion aims to prevent a dispute resolved in one case from being relitigated in a later case. Courts now refer to *claim preclusion* rather than *res judicata,* and to *issue preclusion* rather than *collateral estoppel.* Issue preclusion prevents relitigation of previously decided issues and applies only (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.)

The trial court correctly found that earlier litigation precluded relitigation of the lien question. On October 19, 2017, a trial court decided the lien was invalid. The court also ordered Kim to withdraw his escrow demand so the sale to New Life could proceed. Park and Central Korean appealed that decision, but the appellate court dismissed their appeal because they lacked standing. Kim could have appealed the issue by filing a motion to vacate, but he never took this step. No one sought review in the Supreme Court. That case is over. The judgment is final.

The lien issue was actually litigated and necessarily decided in the first suit. The court ordered Kim to take action in that suit consistent with its finding he had no lien rights in the property.

The issue was asserted against one who was in privity with a party to the first suit: Kim was in privity with his client Central Korean.

Kim protests he was *not* in privity with Central Korean. To support this claim, Kim cites *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84 (*Kerner*). As New Life points out, the *Kerner*

decision destroys rather than assists Kim's position.  In *Kerner*, Justice Walter Croskey recited that a person who is not a party but who controls an action *in cooperation with others* is bound by the adjudications of litigated matters if that person had a proprietary or financial interest in the judgment.  (*Id.* at p. 126.)

Kim fits this description.  He had a financial interest in the lien question because he sought the lien to guarantee payment to him.  And he controlled the litigation in cooperation with his client Central Korean:  Kim wrote the complaint, and Kim presumably recommended a litigation strategy and gave advice on litigation tactics.  Kim was Central Korean's attorney throughout.  The Court of Appeal dismissed the 2018 appeal because the appeal was centrally about Kim's financial interests and not those of his clients.

Kim protests the trial court made no factual findings about the extent to which he controlled the litigation.  Factual findings were unnecessary, however, because six appellate decisions sufficiently have charted the course of this litigation.  They demonstrate the extent of Kim's involvement.

In reply, Kim adduces new arguments about section 1908 of the Code of Civil Procedure.  Kim forfeited those arguments by failing to raise them in his opening brief.  Raising new issues in reply unfairly deprives the other side of notice and an opportunity to be heard.

The trial court's analysis of issue preclusion was correct. We do not address the other issues in the briefs, which are unnecessary to our decision.

## DISPOSITION

We affirm the judgment and award costs to the respondents.

WILEY, J.

We concur:

GRIMES, Acting P. J.

VIRAMONTES, J.

9