Filed 2/10/21  Coffield v. Hawkins CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| FAYE COFFIELD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WILBERT HAWKINS et al.,<br><br>    Defendants and Respondents. | B302140<br><br>(Los Angeles County Super. Ct. No. BC710381) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Faye Coffield, in pro. per., for Plaintiff and Appellant.

Wilbert Hawkins, in pro. per., for Defendant and Respondent.

Judith Hawkins, in pro. per., for Defendant and Respondent.

B. Ruth Allen, in pro. per., for Defendant and Respondent.

———————————————

Plaintiff and appellant Faye Coffield appeals from a judgment after an order sustaining demurrers in favor of defendants and respondents Wilbert Hawkins, his wife Judith Hawkins, and real estate broker B. Ruth Allen, in this action arising out of the sale of real property owned by a trust.[1]  Coffield contends:  (1) the trial court should have required the parties to meet and confer under Code of Civil Procedure section 430.41;[2] (2) Coffield did not waive her right to object to the timeliness of the defendants' demurrers by opposing them; (3) the causes of action alleged in the complaint are not barred by the applicable statutes of limitation; and (4) the complaint is not barred by the doctrine of claim preclusion, because it is based on newly discovered facts.  We conclude:  (1) an inadequate meet and confer process is not a basis to appeal the trial court's ruling sustaining the demurrers; (2) the trial court did not abuse its discretion by ruling on the demurrers despite issues with service of the pleadings; (3) the causes of action are barred

———————————————

[1] Because more than one party shares the last name Hawkins, they will be referred to individually by their first names for ease of reference.

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

2

by the applicable statutes of limitation; and (4) Coffield's cause of action under the federal Racketeer Influenced and Corrupt Organizations Act is also barred under the doctrine of claim preclusion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### The Trust and *Coffield I*

The Joseph Wade Hawkins and Arthalia Fay Hawkins Family Trust was established in August 2005. The trust's primary asset was a residential property. Wilbert, who is Joseph's nephew, and Coffield, who is Arthalia's niece, are equal beneficiaries under the trust. Arthalia died in April 2006; Joseph died in June 2007. Wilbert is named as the successor trustee of the trust. His wife Judith is named as the second successor trustee, but Wilbert appointed her to act as a co-trustee.

Coffield received no payments from the trust for three years. In January 2010, Coffield filed a petition in probate court for affirmative relief. She sought to remove Wilbert as the successor trustee, to prevent Judith's appointment as the second successor trustee, to appoint an independent trustee,

---

[3] The facts are taken from the allegations of the operative complaint, as well as documents of which the trial court took judicial notice.

and to have an independent audit of the trust conducted (*Coffield I*).[4]

At a hearing on March 18, 2010, Wilbert's counsel stated that the trust had received an offer to purchase the real property, and escrow was to close on May 1, 2010. The court continued the matter to June 2010, to allow the property to close escrow. At the June 2010 hearing, Wilbert stated that escrow had not closed. He said he needed a court order authorizing him to sell the property, which the court issued. The matter was continued to September. On September 2, 2010, Wilbert's counsel said escrow would close the next day. The matter was continued to December 2010.

At the December 2010 hearing, Wilbert's counsel stated escrow had closed in September 2010. The court ordered Wilbert to disburse Coffield's share of the proceeds and prepare a final accounting. The matter was scheduled for trial and final disbursement of the trust assets in April 2013.

At the April 2013 hearing, Wilbert testified that when the property failed to close escrow on May 1, 2010, he had to enter into an agreement with the buyer to reimburse

---

[4] The original complaint alleged that Wilbert listed the property for sale with Allen, who is a licensed real estate broker, on February 17, 2010. He listed the property in his own name, rather than as trustee of the trust, even though the property had been in the name of the trust since 2005. On February 25, 2010, a purchase contract for $185,000 was entered into with buyer David Andrews. The sale was scheduled to close escrow on May 1, 2010.

expenses in excess of $8,000, which were paid from the September 1, 2010 escrow proceeds.[5]

On July 5, 2013, the trial court entered an order after trial on Coffield's petition for affirmative relief. The court denied relief as to the following issues: (1) whether the successor trustee failed to disburse the trust according to the trust provisions; (2) whether a tax reassessment and penalties should be the personal responsibility of the successor trustee for negligently failing to comply with certain tax laws; (3) whether the successor trustee was liable to the trust and to Coffield for losses suffered from his and his wife's actions; and (4) whether the trust was responsible

---

[5] The original complaint alleged Wilbert presented documentation that escrow closed in September 2010, including an escrow closing sheet. Wilbert could not explain why he had previously stated in accounting documents between June 2005 and the date of sale that the property was worth $369,000. The original complaint also alleged Allen testified at the hearing as a paid witness with special knowledge of real estate. She testified that the Los Angeles County Tax Collector's appraisal of approximately $415,000 for four tax periods that the property was under Wilbert's control was incorrect. Allen had initially valued the property at $75,000 in June 2007. After lingering on the market, the property eventually sold for $185,000, with Allen as the listing and selling broker. She stated that escrow had not been able to close on May 1, 2010, and instead closed on September 3, 2010. She presented documentation, including the escrow closing sheet, to support her statement about the September 3, 2010 closing.

for the payments provided to the purchaser at the escrow closing for tenant removal or related matters.

The court found the trustee must reimburse Coffield for attorney fees of $3,500 incurred due to the trustee's actions, such as failing to provide Coffield with a copy of the trust and failing to account for trust assets prior to instituting a court proceeding. The court found Coffield must repay the trust for half the amount of $6,277 paid for property taxes, exclusive of late fees or penalties incurred by the trust. The court bifurcated issues for trial in October 2013, related to whether Coffield was liable for the trust's administration and litigation costs in connection with her petition.

On July 5, 2013, the trial court entered an order approving the trustee's final account. The trustee's conduct as reflected in the final account was ratified and approved. The court found all assets of the trust had been distributed. On October 21, 2013, after the remaining issues were tried, the court found no basis to order a surcharge against Coffield for the trust's attorney fees.

### *Coffield II*

In April 2014, Coffield filed an action in pro per against Allen for professional negligence, fraud, and breach of fiduciary duties (*Coffield II*). Allen filed a demurrer in pro per on July 3, 2014. She stated that the property had been badly damaged, vandalized, and in need of repairs before it

6

could be listed.  The property was listed on February 17, 2010, for $175,000, and an offer was received on February 25, 2010, for $185,000, which Wilbert accepted.  Allen asserted, among other arguments, that Coffield's cause of action for professional negligence was barred by the statute of limitations.  Allen argued that because Coffield was aware a realtor assisted with the sale, knew the sale price of the property, and was aware of her injury because she believed the value of the property to be higher than the sale price of $185,000, the statute of limitations began to run when escrow closed on May 1, 2010.  The case summary for *Coffield II* reflects that the demurrer was sustained on September 4, 2014.

## *Coffield III*

On June 13, 2018, Coffield filed the instant complaint in pro per against Wilbert, Judith, and Allen alleging causes of action for breach of fiduciary duty, theft by conversion, and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(c)) (*Coffield III*). On October 16, 2018, Allen, acting in pro per, filed a demurrer on the grounds that the causes of action were unintelligible, had been resolved against Coffield in prior actions, and were barred by the statute of limitations.  She submitted copies of the prior judicial orders.  She included escrow instructions dated August 25, 2010, signed by Wilbert and Judith, directing the escrow company to hold

$6,000 from the seller's proceeds and credit the buyer with a per diem of $86 until the tenant vacated the property. If the tenant remained on the property past seven calendar days after close of escrow, the eviction process was to be paid from the seller's funds. In addition, the buyer's landlord would not reimburse his security deposit because he did not move out as scheduled, so the seller agreed to pay $2,040 toward buyer's moving expenses.

The parties agree that Wilbert and Judith served Coffield with demurrers and motions to strike at a hearing in court in January 2019. Coffield's opposition was due on March 1, 2019.

On March 5, 2019, Coffield filed an amended complaint, alleging causes of action for breach of fiduciary duty, fraud, conspiracy to commit fraud, and RICO violations. In addition to many of the facts above, the complaint alleged as follows. The defendants conspired to defraud Coffield of her share of the proceeds of the sale of the real property. Based on the statements made in Allen's demurrer in *Coffield II*, escrow closed on the trust's real property on May 1, 2010. Coffield believes a portion of the proceeds were disbursed to Wilbert, and Allen was entitled to a percentage of the proceeds as the listing broker and agent. Coffield should have received half of the proceeds after expenses, but when the property was initially sold, the defendants concealed the proceeds from Coffield and the probate court. The defendants failed to report the May 1, 2010 escrow closing to Coffield or the probate court in

8

*Coffield I.* These actions were designed to defraud Coffield of her rightful share of the trust. The defendants denied the existence of the May 1, 2010 escrow closing in pleadings, statements, correspondence, and accountings filed with the probate court and Coffield between May 1, 2010, and July 3, 2014. The property was then sold on another occasion for "the exact amount."

Wilbert, Judith, and Allen constituted an "association in fact enterprise." The defendants formed and operated an unlawful conspiracy, agreeing to conceal the real estate closing and the proceeds from Coffield and the court. Coffield was injured, because she was prevented from receiving her designated fair distribution of the trust assets. Her economic injuries include the diminished value of her share of the trust assets and her costs incurred in connection with litigation.

A case management conference, including a hearing on the defendants' demurrers, was held on March 14, 2019. The timeliness of Coffield's amended complaint in opposition to the demurrers was addressed. The court concluded that Coffield made an attempt to timely file the amended complaint electronically, which was rejected. The court allowed the amended complaint to stand. The court reserved a new hearing date of June 6, 2019, and instructed the defendants to file an answer or demurrer within 30 days. Coffield's opposition was to be filed nine court days before the hearing, and the replies were to be filed five court days before the hearing.

On April 11, 2019, Allen filed a demurrer to the amended complaint on the grounds that the complaint failed to state an intelligible cause of action, was barred by the applicable statutes of limitations, and was barred by the doctrine of claim preclusion. The matter arose out of the probate matter in *Coffield I* that was finalized on April 22, 2013, and Coffield had filed a complaint on April 17, 2014, in *Coffield II* based on the same facts, which had been resolved against her. That same day, Judith and Wilbert, acting in pro per, filed a demurrer on the same grounds as Allen had.

On April 30, 2019, Coffield filed a notice with the court that although the case summary showed demurrers had been filed, she had not received copies of the demurrers. She had sent letters to the defendants by express mail requesting copies of the demurrers, which were received by the defendants on April 24, 2019, but she had not received any response. In addition, the defendants had not made any attempt to meet and confer prior to filing the demurrers. Coffield requested that the court deem the demurrers to be untimely filed and served, and to enter the default of each defendant. In her appellate briefs, Coffield states that the defendants mailed copies of the demurrers to her on May 1, 2019, without proofs of service.

On May 23, 2019, Coffield filed oppositions to each demurrer. She argued that the demurrers were untimely, not properly served, and incomplete, because exhibits were not included. In addition, the defendants refused to meet and confer as required under Code of Civil Procedure section

10

430.31, subdivision (a), and the demurrers were not supported by law or the facts alleged in the complaint. The defendants filed replies.

On June 6, 2019, the trial court sustained the demurrers without leave to amend. No reporter's transcript has been made part of the appellate record. The court took judicial notice of the July 5, 2013 order after trial in *Coffield I*, as well as the July 5, 2013 order approving the trustee's final accounting, and the September 4, 2014 ruling on the demurrer in *Coffield II*. The court noted the fact that the defendants failed to engage in the meet and confer process was not a ground on which the court could overrule or sustain the demurrer. Although the defendants had failed to file meet-and-confer declarations, considering the totality of the circumstances and in the interests of judicial economy, the court exercised its discretion to rule on the merits. By opposing the demurrer, the court found Coffield had waived any defects or irregularities in the service. In addition, although Coffield argued that the demurrers were untimely, the court exercised its discretion to consider the merits. The court concluded that Coffield could have raised the causes of action alleged in the amended complaint in *Coffield I*, and therefore, the complaint was barred by the doctrine of claim preclusion. Defendants had established a final judgment on the merits in the first lawsuit. The court sustained the demurrer as to each of the counts of the complaint for failure to state a cause of action.

11

A hearing was held on August 29, 2019, on an order to show cause regarding dismissal. The trial court ordered the amended complaint dismissed. Coffield filed a timely notice of appeal on October 28, 2019.

## DISCUSSION

## Standard of Review

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties (Code Civ. Proc., § 452; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340; see *Schifando* [*v. City of Los Angeles* (2003) 31 Cal.4th 1074,] 1081 [complaint must be read in context and given a reasonable interpretation]); but, '[u]nder the doctrine of truthful pleading, the courts "will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed."' (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179

Cal.App.4th 390, 400; see *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767 ['[w]hile the "allegations [of a complaint] must be accepted as true for purposes of demurrer," the "facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence'"]; *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83 ['[i]f the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits'].)" (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725–726 (*Ivanoff*).)

**<u>Meet and Confer Requirements</u>**

Coffield contends the trial court erred by failing to require the demurring parties to meet and confer under section 430.41. We conclude the trial court did not abuse its discretion in ruling on the demurrer.

"Under section 430.41, before filing a demurrer, the demurring party must meet and confer with the party who filed the challenged pleading 'in person or by telephone' to determine if the demurring party's objections can be resolved by agreement. (§ 430.41, subd. (a)(1).) If the parties are unable to meet and confer at least five days before the responsive pleading is due, the demurring party must file a declaration stating that a good faith attempt to meet and confer was made and explaining the reasons the parties could not meet and confer. (*Id.*, subd. (a)(2).) This

13

declaration results in an automatic 30-day extension of the time to file the responsive pleading. (*Ibid.*) However, under section 430.41, subsection (a)(4), '[a]ny determination by the court that the meet and confer process was insufficient shall not be grounds to overrule or sustain a demurrer.' (*Ibid.*; see also *Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 515 (*Olson*) [relying on § 430.41, subd. (a)(4), in rejecting claim that party's failure to meet and confer deprived trial court of jurisdiction over pleadings]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2019) ¶ 7:97.27, p. 7(l)-48 ['failure to sufficiently meet and confer is not grounds to overrule or sustain a demurrer'].)" (*Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 355 (*Dumas*).)

Although the meet and confer requirements greatly assist the trial court in managing its caseload efficiently, an inadequate effort to meet and confer is not a basis to reverse the trial court's ruling on the demurrer. (See *Dumas, supra,* 45 Cal.App.5th at p. 355 [declining to address the adequacy of the moving party's effort to meet and confer, "as any insufficiency in the process would not undermine the trial court's ruling on the County's demurrer"].) In this case, we find the trial court did not abuse its discretion by proceeding to rule on the demurrers. None of the parties were represented by counsel, they were required to communicate with each other directly, and they had a history of communication difficulties, including issues with service and receipt of documents. Moreover, Coffield has not shown that

14

the claim preclusion bar could have been resolved through the meet and confer process.  The trial court did not err in ruling on the demurrer, despite the defendants' lack of compliance with the statutory meet and confer provisions.

**Timeliness of Service**

Coffield also contends the trial court abused its discretion by finding she waived any defect in the notice of motion by opposing the demurrers.  We find no abuse of discretion.

Section 430.40, subdivision (a), provides that a person against whom a complaint has been filed may demur to the complaint within 30 days after being served with the complaint.  (§ 430.40, subd. (a).)  The trial court has discretion to consider an untimely demurrer.  (*Jackson v. Doe* (2011) 192 Cal.App.4th 742, 749 (*Jackson*); *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 280 (*McAllister*); § 473, subd. (a)(1) ["[t]he court may, in furtherance of justice, and on any terms as may be proper . . . enlarge the time for answer or demurrer"].)

In *McAllister*, the appellant contended that a demurrer should have been denied, "because 'a demurrer *must* be filed and served within 30 days after service of the complaint . . .' pursuant to section 430.40, subdivision (a).  (*McAllister*, *supra*, 147 Cal.App.4th at p. 279, original italics.)  The *McAllister* court rejected this argument for two reasons.  First the court noted that section 430.40 is permissive, not

15

mandatory, because it uses the term 'may' rather than 'must.' (*McAllister*, *supra*, at p. 280.) Second, the court held that "'[t]here is no absolute right to have a pleading stricken for lack of timeliness in filing where no question of jurisdiction is involved, and where, as here, the late filing was a mere irregularity [citation]; the granting or denial of the motion is a matter which lies within the discretion of the court." [Citations.] [¶] . . . The trial court may exercise this discretion so long as its action does 'not affect the substantial rights of the parties." [Citations].' (*Id.* at pp. 281–282.)" (*Jackson*, *supra*, 192 Cal.App.4th at p. 750.)

In this case, the trial court authorized the filing of the amended complaint on March 14, 2019, and provided 30 days for the defendants to file demurrers. Coffield was aware from reviewing the case summary that demurrers had been filed before she filed a request to enter defendants' defaults. Coffield also admitted the demurrers were served on her on May 1, 2019, several weeks before her opposition was due. The trial court's consideration of the demurrers filed within 30 days as previously ordered by the court, although not served until weeks later, did not affect Coffield's "substantial rights," because she was aware the demurrers had been filed with the court prior to requesting entry of defendants' defaults and she did not demonstrate any prejudice from the delay. (*McAllister*, *supra*, 147 Cal.App.4th at p. 282; see also § 475 [requiring the court to "disregard any error . . . or defect, in the pleadings" that does not affect the substantial rights of the parties].) We

16

conclude the trial court acted within its broad discretion by considering defendants' demurrers, although Coffield claimed that service was untimely. (*McAllister, supra*, at p. 282.)

In addition, "'It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion. [Citations.] This rule applies even when no notice was given at all. [Citations.] Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective.' (*Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930; see also *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 7–8.)" (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697.)

Although Coffield raised the issue of improper service, she filed timely oppositions to the demurrers. She was aware of the hearing date and the fact that demurrers had been filed. She did not request a continuance of the hearing or argue that she was prejudiced by inadequate notice or service. The trial court's finding that Coffield waived her objection to defective service by opposing the demurrers is supported by the record, and the court did not abuse its discretion by ruling on the demurrers.

17

## Limitation Statutes

Coffield contends the limitations period begin to run until July 3, 2014, but even accepting that date, her complaint for fraud, breach of fiduciary duty, conspiracy to commit fraud, and RICO violations is barred by the applicable statutes of limitations.

"'Section 338, subdivision (d) provides for a three-year statute for "[a]n action for relief on the ground of fraud or mistake." This statute applies to any action for conspiracy based upon fraud. [Citation.]' [Citations.]" (*Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 321.) To pursue an action based on fraud and conspiracy to commit fraud that accrued on July 3, 2014, Coffield was required to file her complaint by July 3, 2017. Her complaint filed almost a year later on June 13, 2018, is barred by the statute of limitations for fraud.

The Code of Civil Procedure does not specify a statute of limitations for breach of fiduciary duty, so the cause of action is generally governed by the four-year catchall statute of limitations in section 343. (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606 (*Thomson*).) However, "[i]t is widely understood that a plaintiff is not permitted to evade a statute of limitations by artful pleading that labels a cause of action one thing while actually stating another. California courts therefore look to the gravamen of the cause of action. 'To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the

18

cause of action, i.e., the "gravamen" of the cause of action. [Citations.] "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.'" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23.) Accordingly, '[w]here the gravamen of the complaint is that defendant's acts constituted actual or constructive fraud, the applicable statute of limitations is the [Code of Civil Procedure section 338, subdivision (d) three-year] limitations period,' governing fraud even though the cause of action is designated by the plaintiff as a claim for breach of fiduciary duty. [Citation.]" (*Thomson, supra,* 198 Cal.App.4th at pp. 606–607; see *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1479 ["The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent"].) In this case, Coffield's action for breach of fiduciary duty is based on alleged fraudulent acts, and therefore is governed, and barred by the three-year statute of limitations.

RICO does not contain a statute of limitations for actions brought under its civil enforcement provision. (*Agency Holding Corp. v. Malley-Duff & Associates, Inc.* (1987) 483 U.S. 143, 146 (*Agency Holding*).) A civil RICO action filed in federal court borrows the four-year statute of limitations from an analogous federal law. (*Id.* at pp. 148–150.) When an action is brought in state court under a federal statute that does not contain a statute of limitations,

19

however, the state limitations period governs. (*Bunnell v. Department of Corrections* (1998) 64 Cal.App.4th 1360, 1368–1371 (*Bunnell*).) The gravaman of Coffield's RICO allegations is that the defendants concealed facts about the escrow closing in order to defraud Coffield and the court. We conclude the three-year period of section 338, subdivision (d), applies to Coffield's RICO causes of action as well, and all of the counts of the complaint are barred by the statute of limitations.

## Claim Preclusion

Even if we were to find a federal four-year statute of limitations applies to Coffield's RICO counts, we would conclude that the RICO counts are barred by the doctrine of claim preclusion.

### A. General Law

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 (*Samara*).) "We now refer to 'claim preclusion' rather than 'res judicata' (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897 (*Mycogen*)), and use 'issue preclusion' in place of 'direct or collateral estoppel' (*Migra v. Warren City School Dist. Bd. of Ed.* (1984) 465 U.S. 75, 77, fn. 1; see *Vandenberg v.*

20

*Superior Court* (1999) 21 Cal.4th 815, 824 (*Vandenberg*)).”
(*Samara*, *supra*, 5 Cal.5th at p. 326.)

“Claim and issue preclusion have different requirements and effects.  Claim preclusion prevents relitigation of entire causes of action.  (*Mycogen*, *supra*, 28 Cal.4th at p. 896; see also *id.*, at p. 904 [discussing ‘primary right theory,’ which defines the scope of a cause of action].)  Claim preclusion applies only when ‘a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.’ (*DKN Holdings* [*LLC. v. Faerber* (2015)] 61 Cal.4th [813,] 824 [(*DKN Holdings*)].)”  (*Samara*, *supra*, 5 Cal.5th at pp. 326–327.)

“‘If claim preclusion is established, it operates to bar relitigation of the claim altogether.’ (*DKN Holdings*, at p. 824; accord, *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)  The bar applies if the cause of action could have been brought, whether or not it was actually asserted or decided in the first lawsuit.  (*Busick v. Workmen’s Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 974; *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.)  The doctrine promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from “‘splitting a single cause of action or relitigat[ing] the same cause of action on a different legal theory or for different relief.’” (*Mycogen*, at p. 897.)”  (*Ivanoff*, *supra*, 9 Cal.App.5th at p. 727.)

21

"Issue preclusion, by contrast, prevents 'relitigation of previously decided issues,' rather than causes of action as a whole. [Citation.]" (*Samara, supra*, 5 Cal.5th at p. 326.) "The doctrine applies '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' (*DKN Holdings*, at p. 825.)" (*Ivanoff, supra*, 9 Cal.App.5th at pp. 727–728.)

"Here, we are concerned with the claim preclusion aspect of res judicata. To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.)" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).) "In this context, the term 'cause of action' is defined in terms of a primary right and a breach of the corresponding duty; the primary right and the breach together constitute the cause of action." (*Id.* at p. 792.)

"'In California the phrase "cause of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . .' (*Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal.2d 845, 847–848.) But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific

remedy sought or the legal theory (common law or statutory) advanced.  [Citation.]  As we explained in *Slater v. Blackwood, supra*, 15 Cal.3d at page 795:  '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant.  [Citation.]  Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.  "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief."  [Citations.]'  Thus, under the primary rights theory, the determinative factor is the harm suffered.  When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.  (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954.)"  (*Boeken, supra*, 48 Cal.4th at p. 798.)

**B.  RICO**

RICO provides a private civil action to recover treble damages for injuries arising "by reason of a violation of" its substantive provisions.  (18 U.S.C. § 1964(c).)  A RICO violation requires that the defendants, among other things, engaged in "a pattern of racketeering activity" in one of four categories of activity.  (18 U.S.C. § 1962.)  The elements of a RICO violation differ based on the prohibited activity, but in general, "the plaintiff must prove that the defendant caused injury to the plaintiff's business or property by engaging in a

23

pattern of racketeering activity in connection with an enterprise which affects interstate commerce.  [¶]  For an act or omission to qualify as racketeering activity, it must be included in the list of activities set forth in title 18 United States Code section 1961(1)." (*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218, 1232 (*Gervase*).)  "In addition, a common element of all actions included in the list is a requirement that the action be criminal in nature, that is, that it be chargeable, indictable, or punishable as a crime." (*Ibid.*)

"To support a claim under RICO, it is not enough that the defendant engaged in a racketeering activity; rather, the plaintiff must also establish a pattern, of racketeering activity.  In this respect RICO is vague, stating only that a pattern requires at least two predicate acts of racketeering activity.  (18 U.S.C. § 1961(5).)" (*Gervase, supra,* 31 Cal.App.4th at p. 1232.)  "[T]he mere commission of two or more predicate acts within ten years of one another does not automatically constitute a pattern of racketeering activity." (*Morgan v. Bank of Waukegan* (7th Cir. 1986) 804 F.2d 970, 975 (*Morgan*).)  "The acts must demonstrate both a continuity and a relationship in order to constitute a pattern of racketeering activity." (*Ibid.*)  "In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.*, 'transactions "somewhat separated in time and place."'  [Citations.]" (*Ibid.*)

## C. Analysis

As an initial matter, we note that Allen's statement in her demurrer that escrow closed on May 1, 2010, does not lead to the additional facts that Coffield extrapolates. Allen argued in her demurrer that the statute of limitations began to run on May 1, 2010, because Coffield was aware of the sale price, her belief that the property was worth more, and Allen's involvement in the sale. Viewed in the light most favorable to the complaint, Allen stated that escrow closed on a particular date, which was earlier than the date that the defendants had previously represented. The additional facts alleged in *Coffield III* that the defendants must have held two escrow closings with the same buyer for the same amount are not reasonable to infer from Allen's statement that escrow closed on May 1, 2010. Coffield's speculation about two escrow closings is untethered to her factual allegations.

Even accepting Coffield's allegations for purposes of demurrer, the instant action is barred under the doctrine of claim preclusion, because the allegations involve the same primary right and breach of duty as *Coffield I* and *Coffield II*. All three actions arise from the same set of facts and seek compensation for the same harm. The primary right at issue is the same—Coffield's right to distribution of her share of the trust assets in accordance with the trust provisions. Coffield litigated the value of the property and the proper amount of her share of the trust assets against

25

Wilbert and Judith in *Coffield I*. Coffield believed the value of the residential real property was greater than the purported sale price and her share of the trust assets had been improperly reduced through fraud or negligence. She had the opportunity to present evidence and litigate these issues at trial. After a trial, the court found that the successor trustee disbursed the trust property according to the trust provisions. On July 5, 2013, the trial court entered an order approving the trustee's final account, ratifying the trustee's conduct, and finding all assets of the trust had been distributed.

Allen's statement in subsequent litigation that escrow closed on May 1, 2010, was a fact relevant to the claim that Coffield presented in *Coffield I*, not the basis of a new and different claim that Coffield was not aware of until July 3, 2014. When Coffield filed *Coffield I*, she had not received any distribution from the trust. During the course of the litigation, although she may have been unaware of certain details of the scheme, she suspected her share of the trust assets had been reduced through fraud or negligence, she litigated the value of the trust property, and she obtained disbursement of her share of the trust proceeds as determined by the trial court. She had the opportunity to present evidence as to the value of the property, including evidence from the buyer or the escrow company. The RICO counts alleged in *Coffield III*, although they contain additional details, constitute the same claim under a

26

different theory of relief, and therefore, are precluded under the doctrine of claim preclusion.

Our conclusion that the RICO counts are barred by the prior litigation applies even more so to Allen. *Coffield III* arises out of the same set of facts and the same harm as alleged in *Coffield II*. Allen's statement about escrow closing on May 1, 2010, was made within the context of the ongoing litigation in *Coffield II*. Coffield could have sought leave to amend her complaint in *Coffield II* to add the RICO counts, or raised the issue for the first time on appeal in *Coffield II*. Coffield had the opportunity to bring her claim for RICO violations in *Coffield II*, and is now precluded from filing a new lawsuit against Allen based on the same harm. We conclude that the trial court properly sustained both demurrers without leave to amend.

## DISPOSITION

The judgment is affirmed.  Respondents Wilbert Hawkins, Judith Hawkins, and B. Ruth Allen are awarded their costs on appeal.


MOOR, J.

We concur:



RUBIN, P. J.



BAKER, J.