[No. E022187. Fourth Dist., Div. Two. July 16, 1999.]

KENDALL L. ANGELL et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
VERDUGO TRUSTEE SERVICE CORPORATION et al., Real Parties in
Interest.

694

**COUNSEL**

Law Offices of James J. Mazzeo and James J. Mazzeo for Petitioners.

No appearance for Respondent.

Lord, Bissell & Brook, Jeffrey S. Kravitz and George D. Lozano for Real Party in Interest Verdugo Trustee Service Corporation.

Severson & Werson, Jan T. Chilton and Kimberly A. Kralowec for Real Party in Interest Glendale Federal Bank.

## OPINION

**HOLLENHORST, Acting P. J.**—When does a mistake or irregularity in a nonjudicial foreclosure sale justify the trustee's refusal to issue a trust deed after accepting a high bid? We hold that a material mistake which is discovered after the acceptance of a bid but before issuance of a trustee's deed justifies the trustee's refusal to complete the sale. Accordingly, we affirm the trial court's decision granting the trustee's summary judgment motion.

### FACTS

Glendale Federal Bank held a single deed of trust to secure payment of two promissory notes on a certain apartment building on 17th Street in San Bernardino. One note was for $2,750,000 and the second note was for $350,000. In early 1996, the debtor advised Glendale Federal Bank that it would be unable to make payments on its loans. The bank officer in charge of the account was under the impression that each loan was secured by its own deed of trust. She therefore authorized Verdugo Trustee Service Corporation to act as foreclosure trustee and directed it to foreclose the presumed second deed of trust for $350,000. She reasoned that "if a third-party purchased the subject property at the trustee's sale, then the third-party would have purchased it subject to the obligation secured by the senior loan ($2.4 million)."

A notice of default was then prepared and recorded. It recites that the amount owed is $14,850.52 and that the debt is due to one note in the sum of $350,000. A notice of sale was also prepared and recorded. It states that the property would be sold on the courthouse steps at noon on September 11, 1996, and that the amount due was $377,011.75.

Since the deed of trust actually included both notes, the notice of default and the notice of sale were in error. The actual reinstatement amount was $124,429.93, and the actual unpaid balance was $2,938,542.21.

One of the buyers, Kendall L. Angell, submitted a declaration that states: "In addition to obtain[ing] and reviewing the above referenced documents

prior to my bid at the Trustee's Sale, on the morning of September 11, 1996 just prior to the sale, I contacted defendant VERDUGO [the foreclosure trustee] in order to ascertain and confirm the position of the note and deed of trust which was being auctioned. I was told, 'This is a first Deed of Trust being sold. There are no other loans or encumbrances senior to this loan.' The person who gave me this information referred specifically to the TSG (Trustee's Sale Guaranty) that was issued by Lenders Advantage #6970226 and in doing so specifically stated that according to the TSG the note and deed of trust being sold were in first position. The person from VERDUGO also stated that GLENDALE chose to drop the bid from $2.75 million dollars to $340,000.00."[1] A Verdugo employee confirmed that Mr. Angell talked to several Verdugo employees on the morning of the sale.

Petitioner Angell stated in his deposition that he investigated the rentals on the property the morning of the sale and formed the opinion that the property was worth between $800,000 and $1,000,000. Petitioner Yunis thought that the property was worth $1,000,000.

At the sale, Glendale Federal entered a credit bid of $340,000. Petitioners then bid $340,000.01 and the property was sold to them. Petitioners tendered the amount due in cashier's checks.

In the afternoon of September 11th, after the sale, petitioner Angell called Verdugo and was incorrectly told that the deed of trust was a first deed of trust. Later that afternoon, petitioner Yunis called Verdugo and Verdugo's employee informed him that the total obligation against the property was over $2 million, not $340,000. Petitioners then stopped payment on their cashier's checks. Nevertheless, petitioners also signed an agreement that afternoon to sell the property for the sum of $895,000.

The next morning, petitioners went to Verdugo's office and asked that the sale be canceled and their checks returned. Verdugo agreed and returned the cashier's checks to petitioners. Petitioners claimed, and Verdugo employees denied, that the checks were returned with the understanding that petitioners had five days to consult legal counsel and return the money and confirm the sale. They later did so, claiming the security for the $2.4 million note was extinguished by the trustee's sale. Their subsequent tender of the amount bid at the sale was refused.

Subsequently, another foreclosure sale was scheduled but canceled when the debtor gave Glendale a deed in lieu of foreclosure. The property was sold to a third party purchaser on May 1, 1997, for $1.3 million.

---

[1]Although Verdugo challenges this declaration because it was filed late, we will consider it to show the alleged sequence of events.

Petitioners then filed this action alleging that they are the true owners of the property.

## APPEALABILITY

■■ Verdugo filed a cross-complaint for declaratory relief and rescission. This cross-complaint was not resolved by the trial court's granting of the summary judgment motions. Accordingly, we asked Verdugo whether it would be willing to dismiss the cross-complaint in order to comply with the one final judgment rule. Verdugo declined, stating that it would prefer that we amend the trial court judgment to provide that the cross-complaint is dismissed for mootness. It asserts that, if done in this manner, the cross-complaint would be revived in the event we reversed the judgment.

Mr. Angell naturally desires consideration of his appeal on the merits. He therefore requests that this court treat his appeal as a petition for an extraordinary writ if we are not willing to amend the trial court judgment in the manner requested by Verdugo.

■■ The "one final judgment rule" provides that an appeal may be taken from a final judgment, but not an interlocutory judgment. (Code Civ. Proc., § 904.1, subd. (a)(1).) To determine whether a particular declaratory judgment is final, the " 'general test' " is " 'that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720], quoting from *Lyon* v. *Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]; accord, *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 741 [29 Cal.Rptr.2d 804, 872 P.2d 143].)

Therefore, ". . . an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, 743 [disapproving statements to the contrary in, inter alia, *Garat* v. *City of Riverside* (1991) 2 Cal.App.4th 259, 276 & fn. 8 [3 Cal.Rptr.2d 504], and *Day* v. *Papadakis* (1991) 231 Cal.App.3d 503, 511-512 [282 Cal.Rptr. 548]].) "A petition for a writ, not an appeal, is the authorized means for obtaining review of judgments and orders that lack the finality required by Code of Civil Procedure section 904.1, subdivision (a)." (*Morehart, supra,* at pp. 743-744.)

The same rule applies when some of the causes of action are alleged in a cross-complaint. Thus, when a judgment resolves a complaint, but does not dispose of a cross-complaint pending between the same parties, the judgment is not final and thus not appealable. (*Southern Pacific Land Co.* v. *Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 825-826 [233 Cal.Rptr. 794].) In that event, the appeal must be dismissed (*Nicholson* v. *Henderson* (1944) 25 Cal.2d 375, 381 [153 P.2d 945]), unless the appellate court chooses to treat the improper appeal as a petition for an extraordinary writ. (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, 744-747.)

 Here, the presence of an unresolved cross-complaint defeats appealability. Although Verdugo asks us to amend the trial court judgment to preserve appealability, none of the cases it cites were decided after *Morehart.* We therefore conclude that the judgment is not appealable.

We then must decide whether to dismiss the appeal or treat the appeal as a petition for an extraordinary writ. A purported appeal from a nonappealable order may be considered to be a petition for an extraordinary writ if (1) the briefs and record before us contain in substance all the elements prescribed by rule 56 of the California Rules of Court for an original mandate proceeding and (2) there are extraordinary circumstances justifying the exercise of that discretionary power. (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, 745-747; *Olson* v. *Cory, supra,* 35 Cal.3d 390, 400-401.)

The first requirement is met by the record here. In addition, we find that the second requirement is also met because it is Verdugo that has the outstanding cross-complaint. Since the existence of the unresolved cross-complaint destroys appealability, Verdugo could defeat petitioner's right to appeal merely by refusing to dismiss the cross-complaint. This would lead to further trial court proceedings, and would not serve the cause of judicial economy. (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, 746.) Under these unusual circumstances, we conclude that we should reach the merits of the appeal by treating the appeal as a petition for an extraordinary writ.

## DISCUSSION

 We review the trial court's granting of the summary judgment motions filed by Verdugo and Glendale under an independent review standard. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Since the facts are generally undisputed, only legal issues are presented.

 Petitioners contend that they are bona fide purchasers for value at the trustee sale, and that they are therefore entitled to receive a trustee's deed. They also contend that there were no irregularities in the sale procedure, and that real parties in interest made certain representations that induced them to rescind the sale.

Petitioners' first argument is that the trustee's sale was neither void nor voidable. Although petitioners cite two cases relied on by the trial court and real parties in interest, they cite no other case authority. In the first case, *Little* v. *CFS Service Corp.* (1987) 188 Cal.App.3d 1354 [233 Cal.Rptr. 923], the court held that a foreclosure sale was void for lack of notice to the trustor, junior lienor, and judgment creditor. Since the sales contract resulting from the foreclosure sale was void, petitioners were only entitled to refund of their money, with interest.

The facts of the case are similar to those here, in that the notice defect was discovered after the sale but before issuance of a trustee's deed. Relevant here, the court said: "Although conclusive presumption language was directed to be included in the trustee's deed, that deed was never prepared, executed or delivered. The trustee discovered the notice defect before completing the transaction by preparation and delivery of the deed; in the absence of the proper notice, the trustee was not required to prepare and deliver a deed containing the conclusive presumption language required by the trust deed. [Citation.] Since the deed was neither prepared nor delivered, any language regarding presumptions of regularity of notice of sale which would have been contained therein did not take effect. Thus there is no conclusive presumption that the sale was properly noticed. This factor aligns our case with those that have held sales with defective notice void." (*Little* v. *CFS Service Corp., supra,* 188 Cal.App.3d 1354, 1360.) The sale was thus held to be void.

Petitioners attempt to distinguish *Little* on grounds that no notice was given in that case, while here the notices were merely defective. We find this factor insignificant because the notice defects here were substantial, and therefore equivalent to no notice at all. "[T]he notice of default will be strictly construed and must correctly set forth the amounts required to cure the default." (*Sweatt* v. *Foreclosure Co.* (1985) 166 Cal.App.3d 273, 278 [212 Cal.Rptr. 350].)

The second case cited is *Moeller* v. *Lien* (1994) 25 Cal.App.4th 822 [30 Cal.Rptr.2d 777]. In that case, a foreclosure sale was held, a sale to bona fide purchasers occurred, and a deed was delivered to them. There were no irregularities in the sale and, due to delivery of the deed, the sale was

conclusively presumed to be valid under Civil Code section 2924. (25 Cal.App.4th at pp. 827-829, 831.) Mere inadequacy of price was not a basis for setting aside the sale. (*Id.,* at p. 832.)

■ The court said: "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.]" (*Moeller* v. *Lien, supra,* 25 Cal.App.4th 822, 831.) However, the conclusive presumption in favor of the bona fide purchaser (Civ. Code, § 2924) does not take effect until delivery of a trustee's deed. "Although a nonjudicial foreclosure sale is generally complete upon acceptance of a bid by the trustee, the conclusive presumption does not apply until a trustee's deed is delivered. Thus, if there is a defect in the procedure which is discovered after the bid is accepted, but prior to delivery of the trustee's deed, the trustee may abort a sale to a bona fide purchaser, return the purchase price and restart the foreclosure process. [Citations.] [¶] . . . [A]n irregularity in the nonjudicial foreclosure sale coupled with a gross inadequacy of price may be sufficient to set aside the sale, where the conclusive presumption does not come into effect because the trust deed has not yet been delivered. [Citation.]" (*Moeller, supra,* at p. 832.) Of course, this is precisely what happened here, and we agree with the trial court that *Moeller* is dispositive.

"In order to challenge the sale successfully there must be evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale. The mere inadequacy of price, standing alone, does not justify setting aside the trustee's sale, but the sale can be set aside where there is a gross inadequacy of the price paid at the sale, together with a slight irregularity, unfairness, or fraud." (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:154, pp. 506-507, fns. omitted.)

■ Second, petitioners argue that they are entitled to the protection of the presumptions stated in Civil Code section 2924 et seq. However, no deed was ever issued here and, as *Moeller* holds, the presumptions which attach to the deed never came into existence. Civil Code section 2924 also provides a rebuttable presumption that is not clearly tied to the issuance of a deed: "There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default." Even if we assume that this rebuttable presumption exists prior to issuance of a

deed to a bona fide purchaser, the fact remains that the undisputed evidence here establishes that any such presumption was rebutted.

Third, petitioners argue that the sale was complete at the time of acceptance of their bid, regardless of the fact that no deed was issued. They cite Civil Code section 2924h, subdivision (a) which states: "Each and every bid made by a bidder at a trustee's sale under a power of sale contained in a deed of trust or mortgage shall be deemed to be an irrevocable offer by that bidder to purchase the property being sold by the trustee under the power of sale for the amount of the bid." The section also states: "[T]he trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale . . . ." (Civ. Code, § 2924h, subd. (c).)

Thus, "[t]he sale is completed for most purposes affecting the rights of the trustor and junior liens when the auctioneer accepts the final bid, even though the deed is not given until a subsequent time. However, when there is a defect in the foreclosure which is discovered before the trustee's deed is delivered to the purchaser, there is no deed which creates the conclusive presumption of validity in favor of a bona fide purchaser. Therefore, if a defect in the foreclosure process is discovered after the trustee has accepted a bid, but prior to the delivery of the trustee's sale [*sic*], the trustee can abort the sale, return any funds received to the purchaser, plus interest, and process another foreclosure." (4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 9:151, pp. 499-500, fns. omitted.)

Petitioners cite *Ballengee* v. *Sadlier* (1986) 179 Cal.App.3d 1 [224 Cal.Rptr. 301]. That case states: "Since the property was actually sold at that moment [of acceptance of the bid], subsequent execution of the trustee's deed evidencing the transfer of title was merely a ministerial act." (*Id.,* at p. 4.) While this is the general rule in a normal foreclosure sale (*Moeller* v. *Lien, supra,* 25 Cal.App.4th 822, 831), the general rule is not applicable when a notice defect renders the sale void. "We believe that *Ballengee* should be limited to its facts: an unsuccessful attempt by a junior lienor to circumvent an antideficiency statute by arranging for his trustee to withhold execution and delivery of the deed to him after he had purchased at his own sale." (*Little* v. *CFS Service Corp., supra,* 188 Cal.App.3d 1354, 1362.)

Building on their contention that they purchased the property at the trustee sale, petitioners next contend that any statement that the property was still encumbered by a $2.4 million loan after the sale was either false or misleading and negligent. They therefore contend that the $2.4 million note was unsecured after the sale to them.

Even if petitioners correctly state the law applicable to a completed transaction,[2] the undisputed fact remains that the transaction here was never completed because the error was discovered before a deed was issued. Thus, petitioners do not come to court clothed with the protections afforded a bona fide purchaser for value. As discussed above, the presumptions of regularity do not attach until a deed is delivered.

Petitioners rely on *Hohn* v. *Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605 [39 Cal.Rptr. 647] (overruled by statute on other grounds as stated in *Miller* v. *Provost* (1994) 26 Cal.App.4th 1703, 1707-1708 [33 Cal.Rptr.2d 288], citing Civ. Code, § 880.020 et seq.). In that case, as here, two notes were secured by one deed of trust. The court held that Mr. Hohn acquired the entire legal title to the property when he foreclosed on the deed of trust as owner of one of the notes. In that case, however, the property was sold at a regular foreclosure sale, and the purchaser at the sale acquired full legal title to the property. (228 Cal.App.2d at pp. 608-610, 612.)

While this is assuredly the proper general rule, we again find it inapplicable because in this case there was an irregularity in the sale which was discovered before a deed was delivered. Discovery of the irregularity allowed the trustee to abort the sale without further liability, provided, of course, that the trustee returns the consideration paid by the successful bidder, plus interest. (*Moeller* v. *Lien, supra,* 25 Cal.App.4th 822, 832, 834.)

Lastly, petitioners contend that the trial court improperly made credibility determinations in finding that there was no fraud or misrepresentation, and failed to state sufficient reasons for its decision. Although they cite *Lechler* v. *City and County of San Francisco* (Cal.App. (A076425)), that case was subsequently deleted from the Official Reports by our Supreme Court's order of September 30, 1998.

In any event, we find that the trial court did not make any credibility determinations. It merely found, on uncontradicted evidence, that petitioners had not spoken to any Glendale representatives. Thus, Glendale had made no representations to petitioners. With regard to Verdugo, the court found that the alleged representations were not misrepresentations but rather were statements consistent with Verdugo's mistaken belief regarding errors in the

---

[2]"If a creditor holds two separate notes which are secured by a single deed of trust on *one* parcel of property, and only *one* note is in default, the creditor must be careful how he enforces his security. If he conducts the foreclosure sale and the trustee sells the property for the payment of the one note, the trustee's deed conveys the full title to the purchaser, and the second note remains unsecured." (4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 9:115, p. 378, fn. omitted.)

foreclosure process. Since all of the evidence showed that any misrepresentations were innocent, there was no evidence of fraudulent misrepresentations. (*Crofoot* v. *Tarman* (1957) 147 Cal.App.2d 443, 447-448 [305 P.2d 56].)

Nor was there any deficiency in the trial court's statement of reasons. (Code Civ. Proc., § 437c, subd. (g).) Petitioners themselves ask that, as a result of the alleged errors, we review all of the evidence presented and make our own "determination regarding the merits of the motion for summary judgment independent of that made by the trial court." Since the independent review standard requires us to make such an evaluation, and we have done so, petitioners have not been prejudiced by any alleged deficiencies in the trial court's statement of reasons. After independent review, we conclude that the trial court's determination was correct and was, indeed, the only proper decision considering the undisputed facts.

### DISPOSITION

The appeal from the judgment is treated as a petition for an extraordinary writ. The petition for an extraordinary writ is denied. Verdugo and Glendale are to recover their costs.

Richli, J., and Ward, J., concurred.