Filed 6/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| 640 OCTAVIA LLC et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>v.<br><br>GREGORY S. WALSTON et al.,<br><br>    Defendants, Cross-complainants and Respondents. | A168428<br><br>(City & County of San Francisco Super. Ct. No. CGC20585410) |

In this appeal, for reasons identified *post*, we conclude a trial court may not rely on the doctrine of claim or issue preclusion to exclude material evidence when a cross-complaint has not yet been litigated. Moreover, given the record at hand, we conclude the court's erroneous use of the preclusion doctrine was prejudicial.

Plaintiffs/cross-defendants, 640 Octavia LLC and Edward Kountze (collectively, plaintiffs), sued defendants/cross-complainants, Gregory S. Walston and Walston and Associates, A Professional Corporation, doing business as Walston Law Group (collectively, Walston), for legal malpractice after Walston unsuccessfully represented plaintiffs in a federal unlawful detainer action. Walston filed a cross-complaint against plaintiffs for unpaid attorney fees related to the federal action.

After plaintiffs failed to comply with numerous discovery orders, the trial court issued terminating sanctions and dismissed their complaint. The

1

matter then proceeded to trial on Walston's cross-complaint, and a jury found plaintiffs liable for $78,905.43 in unpaid fees plus $29,826.25 in prejudgment interest.

Plaintiffs contend this verdict resulted from an erroneous pretrial order that excluded any reference to the allegations made against Walston in the dismissed malpractice complaint on the basis of claim or issue preclusion. We agree, and because the court's erroneous exclusion order was prejudicial, we reverse and remand the matter for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kountze, by and through plaintiff 640 Octavia LLC, owned and managed an apartment building in the City and County of San Francisco. In or around February 2018, plaintiffs hired Walston to represent 640 Octavia in an unlawful detainer action filed in federal court against one of its tenants. Plaintiffs suspected the tenant was engaged in illegal or inappropriate conduct after observing the tenant regularly welcoming "random" visitors into the apartment in the late-night and early morning hours.

During trial in the federal action, an issue arose as to whether the Walston attorney manufactured evidence—specifically, a document containing "house rules" for the tenants of 640 Octavia, which prohibited late-night visitors. After the Walston attorney elicited testimony from a friendly witness (a private investigator) that he served a copy of these house rules on the tenant in November or December 2017, it came to the court's attention that the document was created by the Walston attorney during the course of trial. An earlier version of the house rules, which existed before the lawsuit was filed and was not produced to the opposing party, contained no such prohibition on late-night visitors.

2

After a lengthy side conference with counsel, the perturbed federal judge decided to handle the situation by excluding the recently created document and giving the jury a curative instruction.  On April 2, 2019, the jury found in favor of the tenant and judgment was entered against plaintiffs in the federal action.

On July 15, 2020, plaintiffs filed a civil complaint in San Francisco Superior Court against Walston asserting causes of action for:  breach of contract, negligence, breach of fiduciary duty, negligent misrepresentation, and negligent and intentional infliction of emotional distress.  According to the complaint, Walston breached the parties' agreement and violated their attorney–client relationship by, among other things, filing the unlawful detainer action in the wrong forum; issuing a defective eviction notice; failing to name all occupants and tenants in the complaint; and failing to inform, advise or consult with plaintiffs regarding the status of the federal action.  The complaint further alleged Walston failed to exercise reasonable care and skill and violated various laws and ethical rules while representing plaintiffs in the federal action.  As a result, the complaint alleged, plaintiffs lost the action and incurred unnecessary expenses.

On October 29, 2020, Walston filed a cross-complaint against plaintiffs and others (including Kountze's spouse) for:  breach of contract, common counts/quantum meruit, indemnity, contribution, and declaratory relief.  Walston sought damages in the form of unpaid legal fees, prejudgment interest, and attorney fees and costs.

Plaintiffs failed to answer Walston's cross-complaint in a timely manner, and a default was entered on January 8, 2021.  However, on April 7, 2021, in accordance with a stipulation by the parties, the court set aside the default, and on May 25, 2021, plaintiffs answered the cross-complaint.

Walston subsequently filed numerous requests for discovery relating to plaintiffs' complaint. Plaintiffs failed to respond to these requests and failed to meet and confer, prompting Walston to file a motion to compel. Plaintiffs, however, failed to appear to oppose the motion to compel. Further, plaintiffs failed to pay the sanctions ordered by the court when it granted Walston's motion. Eventually, after plaintiffs failed to comply with additional court orders (including a new sanctions order), Walston moved for terminating sanctions for misuse of the discovery process and asked for dismissal of all claims pursuant to Code of Civil Procedure section 2023.030.[1]

On May 31, 2022, the trial court granted Walston's unopposed motion for terminating sanctions and dismissed plaintiffs' complaint with prejudice. The court also ordered plaintiffs to pay $4,120 in outstanding monetary sanctions.

Walston then moved for attorney fees and costs incurred in defending against plaintiffs' claims in the amount of $74,492.20. The trial court granted this motion on September 15, 2022. Thus, on October 13, 2022, judgment of dismissal and in the amount of $74,492.20 plus postjudgment interest was entered against plaintiffs.

On November 21, 2022, plaintiffs filed a motion seeking relief from the dismissal pursuant to section 473. Plaintiffs' attorney filed a supporting declaration attesting: "It was entirely my fault for failing to oppose the motion [to dismiss the complaint], permit dismissal to occur and judgment entered, which were all unopposed due to my fault. It was my fault for failing to timely file plaintiffs' oppositions. Had I opposed the motion, the dismissal would not have been entered against plaintiffs." The attorney

---

[1] Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

4

explained that he "caught COVID May–June 2022" and became "overwhelmed with press of business . . . ."

On January 17, 2023, the trial court denied plaintiffs' motion. Refusing to "revive the case" on the "eve of trial," the court noted that, for 22 months, plaintiffs "failed to respond to discovery, failed to oppose motions, ignored court orders and failed to pay sanctions—effectively abandoning the case." The trial court also noted that the declaration filed by plaintiffs' attorney in support of the motion mentioned the attorney's having COVID-19 in " 'May–June 2022' " but "offer[ed] no explanation for the many months of case abandonment preceding May 2022 that led to the dismissal. Thus, the dismissal was not caused by counsel's claimed mistake."

On March 20, 2023, plaintiffs filed a notice of appeal from the "Order Denying Motion for Reconsideration," dated March 3, 2023. However, on May 9, 2023, the appeal, No. A167456, was dismissed by this court due to plaintiffs' failure to pay the filing fee and file a case information statement.[2]

In the meantime, the matter proceeded to trial on Walston's cross-complaint. In anticipation of trial, Walston filed several motions in limine. Relevant here, motion in limine No. 5, granted by the trial court, excluded "reference by [plaintiffs] to any allegations in support of their dismissed complaint . . . based on res judicata, which comprises claim and issue preclusion."

On January 30, 2024, trial began on the cross-complaint. At its conclusion, the jury found plaintiffs liable for common

---

[2] Before dismissing appeal No. A167456, the clerk of the court notified plaintiffs of their failures to pay the filing fee and file a case information statement. However, plaintiffs did not cure these defaults by the court's May 4, 2023 deadline.

counts/quantum meruit and breach of contract, and awarded Walston $78,905.43 in damages.

On February 22, 2024, judgment was entered in favor of Walston in the amount of $78,905.43 plus prejudgment interest in the amount of $29,826.25. This timely appeal followed.

**DISCUSSION**

The sole issue on appeal is whether the trial court committed prejudicial error by granting defendants' motion in limine No. 5 on grounds of issue and claim preclusion and, thereby, barring plaintiffs from making "any reference" during the trial on the cross-complaint to the allegations from their dismissed complaint.

We generally review a trial court's evidentiary ruling for abuse of discretion. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 712.) At the same time, we review a trial court's legal conclusion de novo. (*Kourounian v. California Dept. of Tax & Fee Administration* (2023) 91 Cal.App.5th 1100, 1111–1112 (*Kourounian*); *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325.) "In deciding whether the trial court's order[] excluding evidence . . . constituted an abuse of discretion, we 'view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it. [Citation.] We also defer to the trial court's credibility determinations. [Citation.] The trial court's decision will be reversed only "for manifest abuse exceeding the bounds of reason." ' " (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51, 1st bracketed insertion added.) "An evidentiary ruling that 'rests on an error of law is an abuse of discretion.' " (*Kourounian, supra*, 91 Cal.App.5th at p. 1112.)

Moreover, "[e]rror alone is not sufficient to reverse a judgment. We reverse only when a party demonstrates that prejudicial error occurred and

6

caused appellant 'substantial injury' and that a 'different result would have been probable' absent the error. (Code Civ. Proc., § 475.) Reversal, thus, is warranted where ' "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [citations].) Such a ' "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 [citations].)" (*Kourounian, supra*, 91 Cal.App.5th at p. 1112.)

## I. *The court's order excluding all evidence supporting plaintiffs' malpractice allegations based on grounds of claim and issue preclusion was error.*

Plaintiffs contend the trial court prejudicially erred by excluding evidence supporting their claims that defendants committed malpractice in the federal unlawful detainer action because: (1) their dismissed malpractice complaint did not trigger claim or issue preclusion since the action was not yet final; and (2) the court's error deprived them of the ability to establish their defense, to wit, that by committing malpractice, defendants forfeited their right to the unpaid fees.

Defendants counter that the court's ruling was valid, and not prejudicial, because: (1) plaintiffs are precluded from relitigating the malpractice issue on grounds of issue and claim preclusion; and (2) in any event, the court "ultimately chose to avoid confusion by letting the [malpractice] evidence [in] and allow [*sic*] the jury to consider it with no limiting or curative instruction."

We begin by setting forth the substantive law. "The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 (*Samara*).) "It 'rests upon

7

the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' " (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.)

"We have frequently used 'res judicata' as an umbrella term encompassing both claim preclusion and issue preclusion, which we described as two separate 'aspects' of an overarching doctrine."[3] (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824.) "Claim preclusion prevents relitigation of entire causes of action. [Citations.] Claim preclusion applies only when 'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.' [Citation.] Issue preclusion, by contrast, prevents 'relitigation of previously decided issues,' rather than causes of action as a whole. [Citation.] It applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' [Citation.] Courts have understood the ' "necessarily decided" ' prong to 'require[] only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding' [citation]—leaving room for a decision based on two grounds to be preclusive as to both." (*Samara, supra*, 5 Cal.5th at pp. 326–327.)

Here, the trial court did not distinguish between issue and claim preclusion in excluding "reference by [plaintiffs] to any allegations in support

---

[3] As the terminology has evolved over time, "[w]e now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel' [citations]." (*Samara, supra*, 5 Cal.5th at p. 326.)

of their dismissed complaint for 1) breach of contract, 2) negligence including negligence per se, 3) breach of fiduciary duty, 4) negligent misrepresentation, 5) intentional infliction of emotional distress, and 6) negligent infliction of emotional distress . . . ." In any event, the court's ruling fails because for purposes of both rules there must be a "first suit" and a "second suit," and here there is but one. (See *Samara, supra*, 5 Cal.5th at pp. 326–327.)

As mentioned *ante*, claim preclusion requires (inter alia) " 'a second suit' " involving " 'the same cause of action . . . after a final judgment on the merits in the first suit.' " (*Samara, supra*, 5 Cal.5th at p. 326.) "A judgment is on the merits . . . 'if the substance of the claim is tried and determined . . . .' (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 313, p. 864.)" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77.) Similarly, issue preclusion requires " 'final adjudication . . . of an identical issue . . . actually litigated and necessarily decided in the first suit.' " (*Samara*, at pp. 326–327.)

Applying these standards, defendants correctly note that "the persistent refusal of a party to make discovery results in a presumption, as a matter of law, that the asserted causes of action are without merit." (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 383, 386.) Accordingly, "dismissals pursuant to a terminating sanction for violation of discovery orders are indeed res judicata." (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 216.) Similarly, a default judgment is " ' "res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint." ' " (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 871; cf. *Johnson v. City of Loma Linda, supra*, 24 Cal.4th at p. 77 [the defense of laches, which bars a cause of action when the plaintiff unreasonably and prejudicially

9

delays in asserting or diligently pursuing the cause, has "nothing to do with the merits of the cause against which it is asserted"].)

However, this rule, allowing dismissal with prejudice pursuant to a terminating sanction to be treated as claim or issue preclusion in a second lawsuit, does not apply when, as here, there was no final judgment in the first lawsuit and, as of yet, no second lawsuit. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration' "].)  We will explain.

"An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." (§ 1049.)  "If an order is appealable . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata." (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 822.)  A fortiori, if an order is not appealable and, thus, there can be no timely appeal, the issues determined by the order are not res judicata. (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1043, fn. 23 [doctrine of res judicata does not apply to an order that is merely interlocutory]; *Morris v. McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964, 973 ["The doctrine of res judicata applies only to final judgments, that is, to judgments which are free from attack on appeal"]; *City of San Diego v. Alpha Securities Corp.* (1950) 99 Cal.App.2d 246, 249 [a judgment that is interlocutory in both substance and effect is not "final" and not subject to res judicata].)

"Section 904.1, subdivision (a), governs the right to appeal in civil actions.  It codifies the 'one final judgment rule,' which provides that an ' " 'an

appeal may be taken only from the final judgment in an entire action.' " [Citation.]' (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756 [citations].) A judgment is final, and therefore appealable, when it embodies 'the final determination of the rights of the parties in an action or proceeding' (§ 577). A judgment constitutes the final determination of the parties' rights ' "where no issue is left for future consideration except the fact of compliance or noncompliance with [its] terms . . . ." [Citation.]' (*Olson v. Cory* (1983) 35 Cal.3d 390, 399 [citations].)  It is a judgment's substance, not its form or label, which determines whether it is final.  (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 698–699 [citations].)" (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1138 (*Kaiser Foundation*).)

"Under the one final judgment rule, interlocutory judgments generally are not appealable.  (*In re Baycol Cases I & II, supra*, 51 Cal.4th at pp. 754, 756.)  This prohibition is in keeping with the premise of the one final judgment rule ' " 'that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' " [Citations.]' (*Id.* at p. 756.)" (*Kaiser Foundation, supra*, 13 Cal.App.5th at p. 1138.)

Thus, "an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 (*Morehart*).)  "The same rule applies when some of the causes of action are alleged in a cross-complaint. . . .  [W]hen a judgment resolves a complaint, but does not dispose of a cross-complaint pending between the same parties, the judgment is not final and thus not appealable." (*Angell v. Superior Court*

11

(1999) 73 Cal.App.4th 691, 698; accord, *First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468, 473 ["a judgment that decides the issues raised in a cross-complaint but not the issues in the complaint is not final"].)

Based on these well-established principles, we conclude the trial court erred in applying the doctrine of claim or issue preclusion to prevent plaintiffs from relitigating claims or issues raised in their dismissed complaint. When the trial court made its ruling, there was no final judgment that "complete[d] the disposition of all the causes of action between the parties" because the causes of action in defendants' cross-complaint remained unresolved. (*Morehart, supra*, 7 Cal.4th at p. 743; *Angell v. Superior Court, supra*, 73 Cal.App.4th at p. 698.) As such, the prerequisites for applying the doctrines of claim and issue preclusion were not met. (*Samara, supra*, 5 Cal.5th at pp. 326–327 [among other things, claim preclusion requires a final judgment on the merits and issue preclusion requires a final adjudication of an identical issue].) Because the judgment of dismissal on plaintiffs' complaint was merely interlocutory, and appellate review was not yet available,[4] neither claim nor issue preclusion prohibited litigation of the claims raised in defendants' cross-complaint. (*Morehart, supra*, at p. 743; *Samara, supra*, at pp. 326–327.)

To the extent Walston's authority (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133

---

[4] As noted, plaintiffs filed a notice of appeal of the order denying their motion for reconsideration of the order dismissing their complaint. However, the appeal, No. A167456, was dismissed due to plaintiffs' failure to pay the filing fee or file a case information statement. (See p. 5, *ante*.) Plaintiffs state in their reply brief that their "earlier purported appeal in this action was premature and its dismissal did not affect when the main action will become final." We agree. (*Angell v. Superior Court, supra*, 73 Cal.App.4th at p. 698.)

Cal.App.4th 1319 (*Alpha Mechanical*)) is inconsistent with this conclusion, we respectfully disagree with it. In *Alpha Mechanical*, the appellate court held that the defendant/cross-complainant could not use matters alleged in its dismissed cross-complaint as defenses to the complaint. (*Id.* at pp. 1324–1326, 1330–1332.) The appellate court reasoned that dismissal with prejudice of the cross-complaint was "a [r]etraxit—[a f]inal [j]udgment on the [m]erits" which barred further litigation of claims raised therein under principles of res judicata. (*Id.* at pp. 1330–1331, italics omitted, citing *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813 (*Torrey Pines*).) However, as noted in *Riverside County Transportation Com. v. Southern California Gas Co.* (2020) 54 Cal.App.5th 823, 839, "the [*Torrey Pines*] court held that the dismissal with prejudice of a previous action—not a cross-complaint in the same action—barred the relitigation of matters alleged in that previous action." As we just explained, this distinction cannot be overlooked—since the dismissal of a previous action fundamentally differs from the dismissal of a complaint when a cross-complaint remains. While the former is a final judgment for purposes of res judicata, the latter is not. (See pp. 11–12, *ante*.)

## II.   *The error was prejudicial.*

Remaining for our consideration is whether the trial court's error requires reversal. As mentioned, trial court error usually requires reversal only when the error was prejudicial, causing substantial injury to the appellant. (*Kourounian, supra*, 91 Cal.App.5th at p. 1112.) Here, however, plaintiffs argue the trial court's ruling constituted "structural error," which is reversible per se. Under the structural error doctrine, "when a trial court erroneously denies *all* evidence relating to a claim, . . . the error [may be deemed] reversible per se because it deprives the party offering the evidence

13

of a fair hearing and of the opportunity to show actual prejudice." (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1114.) According to plaintiffs, the trial court, by excluding " 'any evidence' " supporting their malpractice and related claims in the dismissed complaint, deprived them of the "only defense that had a reasonable chance of success."

Yet, as plaintiffs concede, the jury did, in fact, hear some evidence of Walston's deficient performance in the federal action, notwithstanding the court's ruling on motion in limine No. 5. On several occasions, witnesses and attorneys referenced allegations in plaintiffs' dismissed complaint that, technically, were inadmissible under the court's ruling.

For example, defendant Gregory Walston was cross-examined by plaintiffs' counsel regarding whether he was "brought in front of the judge [in the federal action] for lying." Denying counsel's accusation, Walston testified, "[If the federal judge] had found that I had manufactured evidence or lied about it, then there would have been some sort of response other than bringing me into court," yet there was not. When plaintiffs' counsel attempted to probe this issue further by asking Walston whether he admitted to the federal judge that he created, during trial, a new document with the house rules for 640 Octavia, the trial court sustained defendants' objection.

On redirect, Gregory Walston again denied manufacturing evidence or being sanctioned by the federal judge. Then, when questioned on recross-examination, Walston gave a lengthy explanation as to why the federal judge asked him about manufacturing evidence and lying about it. Walston acknowledged the federal judge became angry during trial about the origin of the version of the house rules that was presented to the jury. However, Walston testified that "the reason that those house rules didn't come in [as evidence] is because they had gotten mixed up by the witness [a private

14

investigator], and the wrong house rules went into the trial exhibits. [¶] The idea that this is all bad faith and I am manufacturing evidence . . . is completely wrong."

In response, plaintiffs' counsel tried to offer exhibit 31, a partial transcript from the federal action, to impeach Gregory Walston's description of what transpired before the federal judge. However, the court sustained Walston's counsel's objection to the document and the line of questioning. Referring to its ruling on motion in limine No. 5, the court limited questioning to one narrow issue—whether or not the federal judge issued a sanction against Walston (not)—and declined to admit the exhibit.

Later, plaintiff Kountze was questioned regarding the federal jury's reaction to the "false Exhibit." Kountze testified that the federal judge "caught the [alleged false evidence] and threatened Mr. Walston with being put on the witness stand, maybe to see if he would lie about it there and possibly suspend his license. [¶] . . . [¶] It was a humiliating experience, and it ended the jury trial right then and there. It cost me a lot of money, and its continued to cost me money . . . ."

Kountze's testimony prompted the trial court to remind counsel that its order precluded the witness from "go[ing] into anything about his dismissed malpractice action." The court also stated it was considering giving a curative instruction to advise the jury that testimony relating to Walston's alleged malfeasance was inadmissible and could not be considered.[5] Ultimately, however, the court decided not to give a curative instruction,

---

[5] Walston and Kountze were also questioned regarding other allegations of Walston's deficient performance in the dismissed complaint, including whether the eviction notice was improper and whether one of plaintiffs' expert witnesses was excluded due to Walston's failure to timely disclose him.

15

despite numerous violations of its order, to avoid confusing the jury: "[T]here was testimony about . . . [plaintiffs'] allegations about Mr. Walston's handling of the case.· There was so much made of that by defense counsel, some of which was objected to, some of which wasn't, and I am afraid it's going to create confusion for the jury. [¶] So I did instruct—after some of the most egregious statements were made, I did admonish the jury not to consider them, and I will have to leave the record like that because I am concerned again that they may be confused as to what they can consider and what they can't."

And yet, despite the trial court's statement, plaintiffs' counsel again argued in closing that Gregory Walston manufactured evidence in the federal trial, telling the jury: Walston "produced an exhibit that supposedly was made in November of 2017.· But when the court examined it, it turned out that it was January of 2018.· The court found that he was so untrustworthy that in the trial itself, the court had to give a curative instruction to the jury, essentially saying don't believe 640 Octavia LLC."

In rebuttal, Walston's counsel used this argument to their advantage: "Now, you have heard all these statements from Defendants about . . . malfeasance, and all the facts of the underlying case.  It's what I stated in my closing statement originally.· Nowhere on your verdict form will you be asked questions . . . [¶] . . . saying did [Walston] commit malfeasance?· Yes or no?· If yes, stop here.  Answer no further questions.· Again, not in your verdict forms. [¶] So what Defendants' counsel just did is to ask you to disregard the judge's orders and instructions."

As this record reflects, plaintiffs are wrong to claim all evidence relating to their malpractice allegations was excluded, triggering application of the structural error doctrine.  On the contrary, plaintiffs' counsel

16

repeatedly disregarded the trial court's order, as well as the court's subsequent admonishments that he needed to come into compliance. Nonetheless, while certainly not condoning counsel's conduct, we conclude reversal is required because a reasonable probability exists that a more favorable result would have been reached absent the court's error in relying on preclusion as grounds to exclude plaintiffs' evidence. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

While plaintiffs violated the court's ruling more times than we care to recite, the fact remains they were not able to get key evidence before the jury. This evidence includes exhibit 31, the partial transcript of the federal proceedings reflecting exactly what was said between Gregory Walston and the federal judge, which could have been used to impeach Walston's testimony.

More importantly, as Walston's counsel emphasized in closing arguments, the jury was not instructed on plaintiffs' theory that Walston's alleged malfeasance excused them from paying the unpaid fees in whole or part. Likewise, the verdict forms did not permit the jury to make a finding on whether, or to what extent, legal malpractice or deficient performance impacted plaintiffs' liability.[6] This was wrong. (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 89

---

[6] The verdict forms simply recited the basic elements of the breach of contract and common counts/quantum meruit causes of action, including the requirement that defendants prove that Walston did "all or substantially all of the significant things that the contract required him to do" and "perform[ed] the services as requested." The verdict forms also asked: "What is the reasonable value of the services that were provided that were not paid?" However, no instruction permitted the jury to offset the value of those services based on malpractice or deficient performance, and Walston's counsel affirmatively told the jury they could not.

["the egregiousness of the attorney's conduct, its potential and actual effect on the client and the attorney–client relationship, and the existence of alternative remedies are all . . . relevant to whether and to what extent forfeiture of compensation is warranted"]; *Safine v. Sinnott* (1993) 15 Cal.App.4th 614, 618–619 [legal malpractice may be asserted as an offset against an attorney's claim to unpaid fees, even if a cause of action for malpractice is time-barred]; cf. *Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1362 [the mandatory fee arbitration was waived pursuant to Bus. & Prof. Code, § 6201, subd. (d)(2), when the client raised a cross-claim alleging that the law firm's malpractice damaged him in an amount exceeding the fees and costs sought by the firm].)

Ultimately, as a result of the court's error, the trial was unfairly weighted in defendants' favor, notwithstanding the fact that some evidence of malfeasance and deficient performance was received. In light of Walston's counsel's argument and the omissions in the jury instructions and verdict forms, there is a reasonable probability that had the jury been properly guided as to how to consider this evidence, a result more favorable to plaintiffs would have been reached. Accordingly, reversal is required. (*Cassim v. Allstate Ins. Co., supra*, 33 Cal.4th at p. 800; see *Alaniz v. Sun Pacific Shippers, L.P.* (2020) 48 Cal.App.5th 332, 342 ["[counsel's] arguments aggravated the prejudicial effect of the erroneous jury instructions"].)

In closing, we emphasize this court is in no way condoning the manner in which this case has been litigated. Plaintiffs' counsel, in the trial court's words, effectively abandoned their complaint. Then, after having terminating sanctions imposed against plaintiffs and the complaint dismissed, counsel repeatedly flouted the court's order not to refer to any allegations set forth in the dismissed complaint. It goes without saying all

18

attorneys are duty bound to comply with court orders, even if they disagree with an order's validity.  That said, however, the trial court's order was, for the reasons stated, a misapplication of the law of preclusion and was prejudicial.  Accordingly, as the reviewing court, we reverse and remand for further proceedings.[7]

## DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial. Appellants shall recover costs on appeal.


Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A168428/*640 Octavia LLC v. Walston*

---

[7] Plaintiffs' request for judicial notice, filed May 24, 2024, is denied.

A168428/640 Octavia LLC v. Walston

Trial Court:        Superior Court of the City and County of San Francisco

Trial Judge:        Kathleen Kelly

Counsel:        Paul Katz and Katz Appellate Law for Plaintiffs, Cross-defendants, and Appellants.

        Heath & Yuen, Stephen B. Heath, Steven W. Yuen, and Joshua G. Yong, for Defendants, Cross-complainants, and Respondents.